# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1146

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Clayton Vesey, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 10, 2003

Filed: August 5, 2003 (corrected August 6, 2003)

_____

Before MORRIS SHEPPARD ARNOLD and RILEY, Circuit Judges, and BOGUE,[1]
District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Clayton Vesey was convicted in the district court[2] of delivery of cocaine base
and possession with intent to deliver cocaine base and powder cocaine, *see* 21 U.S.C.
§ 841(a)(1). On appeal, Mr. Vesey contends that the district court should have

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District
of South Dakota, sitting by designation.

[2]The Honorable Nanette K. Laughrey, United States District Judge for the
Western District of Missouri, sitting by designation.

granted his motion to suppress evidence, stricken portions of the government's expert witness's testimony, and admitted the testimony of his own expert witness. We affirm.

## I.

Mr. Vesey contends that the district court erred in denying his motion to suppress evidence because the search that yielded the evidence was unconstitutional. According to Mr. Vesey, the search violated his fourth amendment rights because the police forcibly entered his home only ten seconds after knocking and announcing their presence. "We review the district court's fact-finding in support of its ruling on the motion to suppress for clear error, and we review *de novo* the district court's ultimate application of the law to the facts." *United States v. Tyler*, 238 F.3d 1036, 1038 (8th Cir. 2001).

Under the fourth amendment's so-called "knock-and-announce" principle, whether police officers have waited long enough after knocking to infer that they have been constructively denied admittance, and thus may enter, "does not turn on any hard and fast time limit, but depends upon the circumstances confronting the officer serving the warrant," *see United States v. Lucht*, 18 F.3d 541, 549 (8th Cir. 1994), *cert. denied*, 513 U.S. 949 (1994); *United States v. Goodson*, 165 F.3d 610, 614 & n.2 (8th Cir. 1999), *cert. denied*, 525 U.S. 1086 (1999). An officer's delay before entering ordinarily should be long enough to ensure that the resident has had time to hear the police knock and to answer the door. *See generally Wilson v. Arkansas*, 514 U.S. 927, 931-32, 936 (1995); *see also Richards v. Wisconsin*, 520 U.S. 385, 393 n.5 (1997). The fourth amendment's reasonableness inquiry is flexible, however, *Wilson*, 514 U.S. at 934, and the suspected presence of drugs in the place to be searched has been held to lessen the time that police officers are required to wait, *United States v. Spikes*, 158 F.3d 913, 926 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999).

The circumstances of this case amply support the district court's conclusion that the police officers' ten-second delay was reasonable under the fourth amendment. Having obtained a warrant to search for drugs and related items, the officers went to Mr. Vesey's apartment. They pounded on the door three times and yelled out, "Police department, search warrant, open the door." They waited "a couple of seconds," as the district judge put it, and, hearing no response, they pounded three more times and repeated their announcement. After waiting and again hearing no response, they forced the door open. We think that it was reasonable for the officers to believe that their pounding and yelling would have immediately alerted anyone in the small apartment of their presence at the door, particularly because they arrived in the afternoon, when it was likely that any occupants were awake. Given the size of the apartment, the time of day, the lack of any verbal response, and the suspected presence of drugs, we conclude that ten seconds was a reasonable period for the police to wait before their forced entry. We therefore agree with the district court that Mr. Vesey's fourth amendment rights were not violated.

## II.

During the search of Mr. Vesey's apartment, the police found a scale, which the government offered into evidence to support the charge that Mr. Vesey was a drug dealer. Mr. Vesey maintains that the district court erred in allowing the government's expert witness to testify that he had "never seen a [drug] user use a scale," and that those who used scales were "all people that are involved in distribution." Mr. Vesey argues that the admission of this evidence violated Federal Rule of Evidence 704(b).

Rule 704(b) prohibits an expert from testifying as to whether a defendant had "the mental state or condition constituting an element of the crime charged." Testimony that, when combined with other evidence, might imply or otherwise cause a jury to infer this ultimate conclusion, however, is permitted under the rule. *See United States v. Dunn*, 846 F.2d 761, 762 (D.C. Cir. 1988). In this case, although the government's expert witness implied that Mr. Vesey possessed the scale for purposes

of drug distribution (and that, indeed, was the very point of the testimony), he did not directly address Mr. Vesey's intention to distribute the drugs. *See United States v. Valentine*, 984 F.2d 906, 910 (8th Cir. 1993), *cert. denied*, 510 U.S. 828 (1993). The testimony was therefore admissible.

## III.

Finally, Mr. Vesey maintains that the district court erred in finding that the testimony of his expert witness, James Holt, was unreliable and therefore inadmissible under Federal Rule of Evidence 702. Through Mr. Holt, a convicted drug trafficker and a confidential informant for law enforcement, Mr. Vesey sought to present evidence of how illegal drug operations are normally conducted and to counter the testimony of the government's expert witness.

Rule 702 requires the trial judge to act as a "gatekeeper," admitting expert testimony only if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993). The trial court is granted broad discretion in its determination of reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence, *see Arkwright Mut. Ins. Co. v. Gwinner Oil. Co.*, 125 F.3d 1176, 1183 (8th Cir. 1997). Expert testimony should be admitted if it is based on sufficient facts, it "is the product of reliable principles and methods," and "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

We believe that by concentrating on Mr. Holt's contradictory, evasive, and "speculative" responses, the district court erroneously shifted the focus of its inquiry to the credibility of Mr. Holt as a witness, and that the testimony should have been admitted. During an offer of proof, Mr. Holt stated on cross-examination that he had bought drugs in a dealer's apartment, although he had earlier testified that an

experienced crack dealer would not sell from his home. We do not believe that this possible contradiction makes his testimony "unreliable" as that word is used in Rule 702. Mr. Holt was qualified to testify as an expert based on the considerable number of drug deals that he had participated in or observed. The fact that his personal experience did not comport with his general observations may have given the trier of fact cause to doubt his credibility or to accord less weight to his testimony, but it does not render that testimony inadmissible. As the Supreme Court emphasized in *Daubert*, 509 U.S. at 595-96, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Similarly, Mr. Vesey's evasiveness regarding the typical use of scales may have indicated that he was a biased or untruthful witness, but questions of credibility are for the trier of fact to decide, *see Arkwright*, 125 F.3d at 1183.

Nor does Mr. Holt's statement that he was necessarily "speculating" because he was not present during the controlled buy at issue in this case render his testimony inadmissible. Although Mr. Holt was not a fact witness, he had read transcripts of the preliminary hearings and reviewed documents that related to the events that gave rise to the indictment. His expert testimony thus had sufficient factual support to be admissible under Rule 702. The district court also held that Mr. Holt's testimony was inadmissible because he expressed a legal conclusion, but the court did not indicate what legal conclusion it was speaking of. If Mr. Holt did indeed express a legal conclusion during his offer of proof, the district court should simply have prohibited him from expressing that conclusion before the jury rather than excluding his testimony in its entirety because of it.

Had the district court concentrated on the reliability of the methods and principles underlying Mr. Holt's opinions, we think that it would have had to admit the testimony. The advisory committee's note to Rule 702 states that experience-based expert testimony is reliable if the expert "explain[s] how that experience leads

to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." In this case, Mr. Holt testified that he had extensive knowledge of the sale, use, and distribution of narcotics as a result of his experience as a drug trafficker and as an informant. He used his knowledge to formulate general rules of drug trafficking behavior and to explain the logic and reasoning behind that behavior from the point of view of drug dealers. He then applied both the rules and the reasoning behind them to the behavior of the actors in this case. The district court may have been concerned that Mr. Holt's "speculative," evasive, and contradictory answers indicated that he was not applying his experience reliably to the facts. Although it can at times be difficult to distinguish a witness who is unreliably applying principles and methods from a witness who is biased and untruthful, we think that a court should admit the testimony when the expert provides some evidence that he or she is the latter rather than the former. Otherwise, the province of the jury is invaded.

Although, for the reasons indicated, we believe that Mr. Holt's expert testimony should have been admitted, we hold that the error was harmless when viewed in the context of the case, *see United States v. Blake*, 107 F.3d 651, 653 (8th Cir. 1997). The evidence against Mr. Vesey was considerable, to say the least. Several witnesses testified that they had bought drugs from Mr. Vesey, and the jury heard a tape recording of the confidential informant making the controlled buy. The police found $16,000 in cash in Mr. Vesey's home (although he was unemployed) and nearly 25 grams of cocaine on his person, both of which strongly indicate that he was involved in drug distribution. In addition, we think it unlikely that the jury would have accorded much weight to Mr. Holt's testimony because he seemed biased and his credibility appeared flawed.

## IV.

For the reasons indicated, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.