PIONEER HI–BRED INTERNATIONAL,
INC., Plaintiff,

v.

OTTAWA PLANT FOOD,
INC., Defendant.

No. C 98–4016–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Oct. 24, 2003.

See also 283 F.Supp.2d 1018.

Christine Lebron–Dykeman, Edmund J. Sease, Heidi Sease Nebel, Jeffrey D. Harty, R. Scott Johnson, McKee, Voorhees & Sease, PLC, Daniel J. Cosgrove, Pioneer Hi–Bred International, Des Moines, IA, for Plaintiff.

James W. Redmond, John C. Gray, Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, Sioux City, IA, Keith D. Parr, Lord, Bissell & Brook, Mark R. Sargis, Bellande, Cheely, O'Flaherty, Sargis & Ayres, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' MOTIONS IN LIMINE AND DEFENDANT'S MOTION FOR AN ADVISORY JURY

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ............................................................ 137

II. *LEGAL ANALYSIS* ......................................................... 138
 A. *Motions To Exclude Experts* ........................................ 138
 1. *Applicable rules* ............................................ 138
 2. *The "Daubert standard"* ...................................... 138
 3. *The challenges to the parties' experts* ...................... 140
 a. *Mr. Patterson* .......................................... 140
 b. *Mr. Carstensen* ......................................... 141
 c. *Mr. Donahue* ............................................ 142
 d. *Mr. Kesan* .............................................. 142
 e. *Mr. Gemini* ............................................. 143
 4. *Summary* ..................................................... 143
 B. *Pioneer's Motion To Exclude Evidence Of Settlements With Other*
 *Defendants* ........................................................ 143
 C. *Pioneer's Motion To Exclude Evidence Of Ottawa's Defenses* .......... 145
 D. *Pioneer's Motion To Exclude Evidence Of Statements From State And*
 *Federal Agencies* .................................................. 146
 E. *Pioneer's Motion To Exclude Evidence Of An Opinion Of Counsel* ...... 147
 F. *Ottawa's Motion To Exclude All Evidence of Reasonable Royalties* .... 148
 G. *Ottawa's Motion For Advisory Jury* ................................. 149

III. *CONCLUSION* ............................................................. 150

### I. INTRODUCTION

This action involves a claim of alleged infringement of patents for hybrid and inbred seed corn by an unlicensed reseller. By order dated September 29, 2003, the court resolved the parties' cross-motions for partial summary judgment on various issues. In essence, the court granted partial summary judgment in favor of Pioneer and against Ottawa on the "liability" issues presented in the parties' motions and denied Ottawa's motion for partial summary judgment on the "damages" issues presented, with the exception that the court granted Ottawa's motion for summary judgment on compensatory damages for sales seasons prior to 1996. *See Pioneer Hi–Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 283 F.Supp.2d 1018 (N.D.Iowa 2003). Trial is now scheduled to begin on November 3, 2003, on "damages" issues and Ottawa's equitable defenses.

This matter comes before the court pursuant to numerous motions in limine filed by the parties on October 8, 2003. Each of the motions has been timely resisted. Somewhat more specifically, the motions in limine before the court are the following: (1) Pioneer's motion to exclude evidence regarding settlements between Pioneer and the original defendants in this action (docket no. 212); (2) Pioneer's motion to exclude evidence from Ottawa's proposed expert Mark R. Patterson (docket no. 213); (3) Pioneer's motion to exclude evidence from Ottawa's proposed expert Peter C. Carstensen (docket no. 214); (4) Pioneer's motion to exclude evidence on Ottawa's defenses of patent exhaustion, laches, estoppel, waiver, invalidity, and scope of the patents (docket no. 215); (5) Pioneer's motion to exclude evidence from Ottawa's proposed expert Patrick Donahue (docket no. 216); (6) Pioneer's motion to exclude evidence related to statements Ottawa allegedly received from the Illinois Attorney General's Office and the Federal Trade Commission in Chicago (docket no. 217); (7) Pioneer's motion to exclude evidence of an opinion of counsel purportedly received by Ottawa (docket no. 218); (8) Ottawa's motion to exclude opinion testimony of Pioneer's rebuttal expert Jay Kesan (docket no. 219); and (9) Ottawa's motion to exclude opinion testimony of Pioneer's expert Joseph Gemini and any evidence of reasonable royalties in the seed industry (docket no. 220). In addition to the motions in limine, the court has before it Ottawa's October 15, 2003, motion for an advisory jury on Ottawa's equitable defenses (docket no. 225), which Pioneer resisted on October 21, 2003. As appropriate, the court will consider these motions individually or in groups of related motions.

## II. LEGAL ANALYSIS

### A. Motions To Exclude Experts

Several of the parties' motions seek to exclude evidence from an expert witness of the opposing party.[1] With the exception of Ottawa's motion to exclude evidence of Pioneer's rebuttal expert Jay Kesan, each of these motions purports to be made pursuant to Rules 702 and 703 of the Federal Rules of Evidence, the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Daubert's* progeny.

### 1. Applicable rules

Rule 702 of the Federal Rules of Evidence provides for testimony by experts as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Rule 703, in turn, considers the admissibility of the bases for opinion testimony by experts:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference un-

less the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

FED. R. EVID. 703. Finally, Rule 704(a) provides guidance on when an expert's opinion on an ultimate issue is permissible:

> (a) Except as provided in subdivision (b) [which pertains to mental state of a criminal defendant], testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

FED. R. EVID. 704(a).

### 2. The "Daubert standard"

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court interpreted the requirements of Rule 702 of the Federal Rules of Evidence concerning testimony by experts. As the Eighth Circuit Court of Appeals subsequently explained, as interpreted by *Daubert*,

> Rule 702 requires the trial judge to act as a "gatekeeper," admitting expert testimony only if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court is granted broad discretion in its determination of reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence, *see Arkwright Mut. Ins. Co. v. Gwinner Oil. Co.*, 125 F.3d 1176, 1183 (8th Cir.1997). Expert testimony should be admitted if [1] it is based on sufficient facts, [2] it "is the product of reliable principles and methods," and [3] "the witness has applied the principles and

---

1. Specifically, these motions are Pioneer's motion to exclude evidence from Ottawa's proposed expert Mark R. Patterson (docket no. 213); Pioneer's motion to exclude evidence from Ottawa's proposed expert Peter C. Carstensen (docket no. 214); Pioneer's motion to exclude evidence from Ottawa's proposed expert Patrick Donahue (docket no. 216); Ottawa's motion to exclude opinion testimony of Pioneer's rebuttal expert Jay Kesan (docket no. 219); and Ottawa's motion to exclude opinion testimony of Pioneer's expert Joseph Gemini (docket no. 220).

methods reliably to the facts of the case." Fed.R.Evid. 702; *see also General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

*United States v. Vesey,* 338 F.3d 913, 916–17 (8th Cir.2003); *Anderson v. Raymond Corp.,* 340 F.3d 520, 523 (8th Cir.2003) ("Under [*Daubert*], district courts must act as gatekeepers to 'insure that proffered expert testimony is both relevant and reliable.'") (quoting *Dancy v. Hyster Co.,* 127 F.3d 649, 652 (8th Cir.1997), *cert. denied,* 523 U.S. 1004, 118 S.Ct. 1186, 140 L.Ed.2d 316 (1998)); *Kudabeck v. Kroger Co.,* 338 F.3d 856, 859 (8th Cir.2003) ("[Rule 702] consists of three distinct but related requirements: (1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy.").

In *Daubert,* the Supreme Court established how the trial court is to perform its "gatekeeper" function under Rule 702:

First, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." [*Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469]. The Court cautioned that the trial court must focus "on [the] principles and methodology, not on the conclusions that they generate." *Id.* at 595, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Second, the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. *Id.* at 592, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Id.* at 591, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. The Court, in *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), clarified that the district court's gatekeeper function applies to all expert testimony, not just testimony based in sci-

ence. *Id.* at 147, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238.

*Kudabeck,* 338 F.3d at 860. However, "[a]s the Supreme Court emphasized in *Daubert,* 509 U.S. at 595–96, 113 S.Ct. 2786, 125 L.Ed.2d 469, 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Vesey,* 338 F.3d at 917.

 *Daubert* rulings are reviewed for abuse of discretion. *Group Health Plan, Inc. v. Philip Morris USA, Inc.,* 344 F.3d 753, 758 (8th Cir.2003). As the Eighth Circuit Court of Appeals recently explained,

Although in limine hearings are generally recommended prior to *Daubert* determinations, *see Padillas v. Stork–Gamco, Inc.,* 186 F.3d 412, 418 (3d Cir.1999), they are not required, *see Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 685–86 (8th Cir.2001). The only legal requirement is that the parties "have an adequate opportunity to be heard" before the district court makes its decision. *See, e.g., Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 249 & n. 3 (6th Cir.2001), *cert. denied,* 534 U.S. 822, 122 S.Ct. 56, 151 L.Ed.2d 25 (2001); *Cortes–Irizarry v. Corporacion Insular De Seguros,* 111 F.3d 184, 188 n. 3 (1st Cir. 1997).

*Group Health Plan, Inc.,* 344 F.3d at 761 n. 3; *accord Anderson,* 340 F.3d at 524 (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). For example, the opportunity to present written arguments and supporting submissions may constitute an "adequate opportunity to be heard" on a *Daubert* question. *Id.* In the present case, the court informed the parties at oral arguments on another matter that the court's schedule would not permit a separate "*Daubert* hearing," so that the court would attempt to make what determinations it could from the parties' written submissions, reserving for trial any questions about admissibility of expert testimony that could not be determined from the written submissions.

### 3. The challenges to the parties' experts

■ The court finds that each of the challenged experts is plainly qualified by knowledge, experience, and education to offer expert opinions on various issues in this patent case. *See* FED. R. CIV. P. 702 (qualification of an expert). It is also likely that specialized knowledge on several of the issues to which these experts would testify would assist the trier of fact in this case to understand the evidence or determine a fact in issue. *Id.* (purposes for which expert testimony is admissible). With notable exceptions, which are discussed separately below, the court also finds that the proffered experts satisfy the enumerated requirements of Rule 702 and the two steps of the *Daubert* analysis. *See* FED. R. EVID. 702 (testimony from a qualified expert on an issue on which expert testimony will assist the trier of fact is admissible "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."); *Kudabeck*, 338 F.3d at 860 (under *Daubert*, "[f]irst, the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue [and] [s]econd, the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact.") (internal citations and quotation marks omitted).

Indeed, the court believes that what is really at issue in most of the challenges is the weight to be given the challenged portions of each expert's testimony, which is an issue for the jury, *see Vesey*, 338 F.3d at 917 ("The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence"), or a disagreement with an expert's conclusions, which is not a basis for the court to exclude the opinion. *See Kudabeck*, 338 F.3d at 860 ("The Court [in *Daubert*] cautioned that the trial court must focus 'on [the] principles and methodology, not on the conclusions that they generate.'") (quoting

*Daubert*, 509 U.S. at 595, 113 S.Ct. 2786). "As the Supreme Court emphasized in *Daubert*, 509 U.S. at 595–96, 113 S.Ct. 2786, 125 L.Ed.2d 469, 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Vesey*, 338 F.3d at 917.

However, the court will examine below some notable exceptions to its general conclusion that the testimony of all of the challenged experts is admissible and will discuss certain specific matters that deserve consideration in more detail.

#### a. Mr. Patterson

■ One of the notable exceptions to the court's general conclusion that the testimony of the challenged experts is admissible is one category of evidence from Ottawa's proposed expert Mark R. Patterson, a patent lawyer and law professor, to which Pioneer objects. That evidence is Mr. Patterson's testimony that Pioneer has already been fully compensated by prior sales of seed. Any "expert" testimony from Mr. Patterson that Pioneer was fully compensated by prior sales fails the second and third requirements of Rule 702 and the first step of a *Daubert* assessment, because his "reasoning" either is invalid or cannot properly be applied to the facts in issue. *See* FED. R. EVID. 702; *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786; *Kudabeck*, 338 F.3d at 860. This is so, because such an opinion is based on an erroneous legal premise. This court explained in its summary judgment ruling that prior sales to Ottawa did not fully compensate Pioneer, because those *conditional* sales reflected only the value of the "use" rights conferred by the patentee, here, the rights to use the seed corn to produce grain or forage, and therefore, pursuant to 35 U.S.C. § 284, Pioneer is now entitled to recover at least a reasonable royalty for the infringement of the rights that it did *not* convey to Ottawa. *See Pioneer Hi–Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 283 F.Supp.2d 1018, 1054–55 (N.D.Iowa 2003). Consequently, Pioneer's motion in limine to exclude Mr. Patterson's testimony will be granted to the extent that Mr. Patterson will not be permitted to testify

that Pioneer has been fully compensated by prior sales.

This is not to say that Mr. Patterson could not offer expert opinions that the right to resell Pioneer ® brand seed corn has no separate value, that Pioneer in fact lost no profits, or that the value of a "reasonable royalty" for the right to resell is nominal or nil, *if Mr. Patterson has an adequate factual basis for such opinions, such testimony is the product of reliable principles or methods, and Mr. Patterson has applied the principles and methods reliably to the facts of the case. See* FED. R. EVID. 702. Whether these requirements of Rule 702 have been satisfied as to such opinions, however, is something this court cannot tell from Pioneer's motion in limine or Ottawa's response. Therefore, that question will be reserved for resolution during the trial.

■ The court finds that it must also expressly address Pioneer's contention that the court should exclude Mr. Patterson's testimony that "legal uncertainty"—specifically, uncertainty about whether Ottawa's acts infringed Pioneer's patents—would have affected the willingness of Ottawa to pay any royalty, because Pioneer contends that such "legal uncertainty" is not a factor for consideration in the reasonable royalty calculus under *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970). The court concludes, at least on a preliminary basis, that such evidence may be admissible, notwithstanding Pioneer's objection to it. This court has held in other litigation that the *Georgia–Pacific* factors for determining a reasonable royalty are not exclusive, *see Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.*, 898 F.Supp. 1334, 1337 (N.D.Iowa 1995), Pioneer has not cited a contrary decision, and the court has not found one. Furthermore, the court finds that Mr. Patterson's "legal uncertainty" testimony is relevant and will serve to aid the trier of fact, in that it may assist the trier of fact by providing information—for example, about the context or market realities of the hypothetical negotiation of a reasonable royalty—that is beyond the common knowledge of the trier of fact. *See Kudabeck*, 338 F.3d at 860 (second step in the *Daubert* analysis).

Pioneer's objection to this testimony, the court finds, actually goes to the expert's conclusions, *see Kudabeck*, 338 F.3d at 860 ("The Court [in *Daubert*] cautioned that the trial court must focus 'on [the] principles and methodology, not on the conclusions that they generate.'") (quoting *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786), or to the weight to be given to the testimony, *see Vesey*, 338 F.3d at 917 ("The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence"), not its admissibility under either Rule 702 or *Daubert*. Therefore, this portion of Pioneer's motion in limine to exclude Mr. Patterson's testimony will be denied.

### b. Mr. Carstensen

■ Another notable exception to the court's conclusion that the majority of the experts' challenged testimony is admissible is to be found in the challenged testimony of Ottawa's expert Peter C. Carstensen. Specifically, Pioneer contends that the court should exclude the testimony of Mr. Carstensen that Pioneer's use of restrictive licenses would adversely affect the efficient operation of the market, because such an opinion is irrelevant to any issue in this case. Ottawa does not expressly attempt to defend the admissibility of that opinion.

The court agrees that any opinion by Mr. Carstensen that Pioneer's restrictive licenses adversely affect the efficient operation of the market is irrelevant to the issues in this case. *See* FED. R. EVID. 702 (expert testimony must assist the trier of fact to understand or determine "a fact in issue"); *Anderson*, 340 F.3d at 523 ("Under [*Daubert*], district courts must act as gatekeepers to 'insure that proffered expert testimony is both relevant and reliable.'") (quoting *Dancy*, 127 F.3d at 652); *Kudabeck*, 338 F.3d at 860 (the second step in the *Daubert* analysis is to determine whether the evidence "is relevant and will serve to aid the trier of fact") *Vesey*, 338 F.3d at 916 (under Rule 702, evidence must be both "relevant and reliable"); *see also* FED. R. EVID. 402 (irrelevant evidence is inadmissible). As Pioneer observes, and

this court has held, 35 U.S.C. § 284 "is un-equivocal that the district court must award damages in an amount not less than a reasonable royalty" upon a finding of infringement. *See Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed.Cir.2003) (citing § 284 and *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed.Cir.1990), which states, "In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated."); *see Pioneer Hi–Bred Int'l, Inc.*, 283 F.Supp.2d at 1052–53 (quoting *Dow Chem.*). Because damages are mandatory on a finding of infringement of Pioneer's right to resell, and there has been a finding of infringement of that right in this case, testimony that Pioneer's reservation of the right to resell has a negative impact on the market is irrelevant to the remaining issue of Pioneer's damages.[2] This much of Pioneer's motion in limine to exclude testimony by Mr. Carstensen will be granted. In contrast, Mr. Carstensen's opinions on what constitutes a reasonable royalty in the event of infringement may be admissible, to the extent that his testimony focuses on the value of the reserved right to resell, which Ottawa infringed, as distinct from the value of rights conveyed.

### c. Mr. Donahue

■ The court tarries over Pioneer's challenge to testimony of Ottawa's expert Patrick Donahue only long enough to agree with both parties that Mr. Donahue's primary value is as a fact witness and that he cannot be asked to express an expert opinion about either Pioneer's lost profits or what might constitute a reasonable royalty for the infringement of Pioneer's right to resell. However, Ottawa contends that Mr. Donahue should be allowed to testify as an expert as to Ottawa's own profits from its resale of Pioneer® brand seed corn, on the ground that Ottawa's actual profits are relevant to a determination of either Pioneer's lost profits or a reasonable royalty for the reserved right to resell. The court agrees with Ottawa that Mr. Donahue is qualified to give such an opinion and further agrees with Ottawa that Ottawa's actual profits may be relevant to the calculation of a reasonable royalty. *See Century Wrecker Corp.*, 898 F.Supp. at 1337–38. Therefore, Pioneer's motion in limine to exclude any and all of Mr. Donahue's expert opinions will be denied, but without prejudice to Pioneer's right to object at trial should Mr. Donahue stray from the issues on which he is permitted to testify as an expert.

### d. Mr. Kesan

Another notable exception to the admissibility of the testimony of the challenged experts is certain testimony of Pioneer's rebuttal expert Jay Kesan, which Ottawa seeks to exclude. Ottawa argues that certain of Mr. Kesan's testimony invades the province of the jury. Pioneer disagrees.

■ The court must agree that any testimony by Mr. Kesan as to the sufficiency of the evidence of infringement or willful infringement is either irrelevant or clearly "invade[s] the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." *See Vesey*, 338 F.3d at 917. First, expert testimony that there is sufficient evidence of infringement is irrelevant, because the court has already held that, as a matter of law, Ottawa infringed Pioneer's patents. *See* FED. R. EVID. 402 (irrelevant evidence is inadmissible). Although the question of "willful infringement" is still open for the jury to resolve, and Rule 704(a) expressly permits an expert's opinion to embrace an ultimate issue to be decided by the trier of fact, *see* FED. R. EVID. 704(a), the testimony of Mr. Kesan regarding the sufficiency of the evidence of willful infringement is nevertheless inadmissible. This is so, be-

---

2. It does not appear to the court that Mr. Carstensen's opinion is that the impact on the market of Pioneer's reservation of the right to resell would have figured in the hypothetical negotiation of a reasonable royalty between a willing licensor and a willing licensee. It appears that his opinion about the negative impact on the market of the reservation of the right to resell was intended to support Ottawa's contention that the limited label license is unenforceable on public policy grounds, which the court rejected in its summary judgment ruling, rendering the opinion irrelevant to remaining issues.

cause willful infringement is *not* an issue on which the court finds that expert testimony will assist the trier of fact to understand the evidence or determine the issue. *See* FED. R. EVID. 702 (prerequisites to admission of expert testimony). Rather, "willful infringement" is a matter for jury determination, in light of facts well within their understanding and appropriate instructions from the court. Therefore, that much of Ottawa's motion in limine seeking to exclude testimony of Mr. Kesan concerning the sufficiency of evidence of infringement or willful infringement will be granted.

However, the court reserves for trial the question of Mr. Kesan's competence to testify as an expert on matters such as whether or not consumers faced a "two supplier" market. It is not clear whether Mr. Kesan is either qualified to offer such an opinion or that his testimony on a "two supplier" market is based on sufficient data or reliable principles or methods. *See* FED. R. EVID. 702.

### e. Mr. Gemini

■ Finally, the court finds that it must expressly address Ottawa's motion to exclude opinion testimony of Pioneer's expert Joseph Gemini, albeit much more briefly than the parties have done.[3] Ottawa contends that there is no economic, logical, or legal basis for Mr. Gemini's opinion that Pioneer should recover for violation of Pioneer's reserved right to' resell lost profits or a reasonably royalty of $30 per bag, which is the same profit that Pioneer allegedly received for its conditional sales of Pioneer ® brand seed corn for purposes of growing corn for grain or forage. Ottawa also contends that Mr. Gemini did not perform any analysis to determine what would be a reasonable royalty for a right to resell. Pioneer contends that there is, indeed, a reasoned basis for Mr. Gemini's opinions concerning lost profits or a reasonable royalty. This dispute, the court finds, boils down to a disagreement with an expert's conclusions, which is not a basis for the court to exclude the opinion, *see Kudabeck,* 338 F.3d at 860 ("The Court [in *Dau-*

*bert* ] cautioned that the trial court must focus 'on [the] principles and methodology, not on the conclusions that they generate.' ") (quoting *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786), or the weight to be given his opinions. *See Vesey,* 338 F.3d at 917 ("The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence"). "As the Supreme Court emphasized in *Daubert,* 509 U.S. at 595–96, 113 S.Ct. 2786, 125 L.Ed.2d 469, 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.' " *Vesey,* 338 F.3d at 917.

Therefore, Ottawa's motion in limine to exclude Mr. Gemini's expert testimony will be denied.

### 4. Summary

Except as expressly noted above, the parties' motions to exclude experts or specific aspects of their testimony will be denied. However, nothing in the denial of the motions in limine bars either party from raising a timely challenge during trial to the admission of "expert" testimony that the court has here declined to exclude, because it is the intention of the court to reserve all such questions for trial where the determination of admissibility can be made on the basis of a more complete record.

### B. Pioneer's Motion To Exclude Evidence Of Settlements With Other Defendants

■ In addition to motions to exclude expert testimony, the parties have filed motions to exclude other kinds of evidence. The first of these "other" motions is Pioneer's motion to exclude evidence regarding settlements between Pioneer and the original defendants in this action (docket no. 212). Pioneer contends that this evidence is excludable under Rules 402, 403, and 408 of the Federal Rules of Evidence. Some what more specifically, Pioneer argues that the

---

**3.** The court will consider separately Ottawa's further contention, in its motion in limine also seeking exclusion of Mr. Gemini's opinions, that the court should exclude any evidence of reasonable royalties in the seed industry (docket no. 220).

evidence of settlements between Pioneer and the original defendants in this action cannot properly be considered as evidence of any "reasonably royalty" that may be owing from Ottawa for its infringement of Pioneer's reserved right to resell Pioneer ® brand seed corn.

Ottawa, however, contends that Pioneer not only settled with the other defendants, but insisted upon and obtained an Order and Decree from the court, which was entered on February 20, 2003, but which makes no reference to any settlement among the parties. Ottawa contends that the fact that the Decree awarded Pioneer no royalty for the resale of seed by other defendants is relevant to the computation of any reasonable royalty from Ottawa, and indeed, is relevant to Ottawa's argument that there is no credible evidence of what a reasonable royalty might be, because Pioneer has never recovered any royalty at all. Ottawa also contends that the Decree is relevant to its equitable defenses, because it shows that Pioneer sued other defendants, but then did not prosecute them for damages.

Rule 408 of the Federal Rules of Evidence provides, in pertinent part, as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. . . . This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

FED. R. EVID. 408. Application of the rule is not restricted to parties who were involved in the settlement. *See Kennon v. Slipstreamer, Inc.,* 794 F.2d 1067, 1069 (5th Cir.1986). Although it may be appropriate to inform the jury that the plaintiff has settled with other defendants, to explain their absence from proceedings against the remaining defendant, the details of any settlement with other defendants is not ordinarily admissible, and the jury should ordinarily be cautioned that they should not consider the settlement with other defendants in considering the claim against a remaining defendant. *See id.* at 1069–72; *Belton v. Fibreboard Corp.,* 724 F.2d 500, 505 (5th Cir.1984).

There may be some value in this case to clarifying the circumstances for the jury by explaining that Pioneer has settled with other defendants, but the court need not make that call at this time. *See id.* However, even if the fact of the settlement with other defendants were admissible, the terms of the settlements would not be. *Id.; Belton,* 724 F.2d at 505. This is so for a number of specific reasons.

First, the court agrees that the settlement agreements with other defendants cannot be admitted to show the amount of the claim against the remaining defendant. *See* FED. R. CIV. P. 408. Second, the court is not persuaded by Ottawa's argument that admissibility of the evidence of the Decree, which was entered pursuant to the settlement with other defendants, is a question outside the scope of Rule 408. The court deems it inappropriate for Ottawa to attempt to circumvent Rule 408 by attempting to admit the Decree rather than evidence of the settlements. This is so, because the Decree was at least in part in the nature of administrative closure in light of settlement rather than a disposition of claims. Third, even assuming that the Decree is not within the letter or spirit of Rule 408, the court concludes that the risk of unfair prejudice from disclosure of the Decree, in light of the purposes for which Ottawa intends to use it, outweighs any marginal relevance the Decree may have to showing the value of Pioneer's claim against Ottawa. *See* FED. R. EVID. 403 (relevant evidence may be excluded on the ground that the potential for unfair prejudice outweighs the probative value). Indeed, the court doubts that the Decree has more than marginal relevance, because numerous factors, apart from the value of the claim, go into the determination to settle, so that the Decree actually says little or nothing about the value of Pioneer's claim against Ottawa. The unfair prejudice more than outweighing this marginal probative value arises, in part, from

the fact that, if the Decree is admitted, it will invite a "mini-trial" on similarities and differences in the facts regarding the "same" claims against the other defendants to determine what, if any, light the Decree sheds on the value of the claim against Ottawa. Nor does the court see any probative value of the evidence of the Decree to determination of Ottawa's equitable defenses, *i.e.*, the court sees little or no probative value in the Decree for a purpose other than showing the amount of a claim. *Cf.* FED. R. EVID. 408 (evidence of settlement may be admissible for a purpose other than to show the value or validity of a claim). Ottawa contends that evidence of settlements is relevant to its equitable defenses, because it shows that after suing the other defendants, Pioneer did not prosecute those other defendants for any damages. However, Pioneer clearly sued each of the other defendants and sued Ottawa, without sitting on its rights, and the Decree is not to the contrary.

Therefore, Pioneer's motion to exclude evidence regarding settlements between Pioneer and the original defendants in this action will be granted and the exclusion of evidence regarding settlements extends to the February 20, 2003, Decree following Pioneer's settlement with other defendants.

### C. *Pioneer's Motion To Exclude Evidence Of Ottawa's Defenses*

Pioneer has also moved, pursuant to Rules 402 and 403 of the Federal Rules of Evidence, to exclude evidence or testimony relating to any defenses other than laches, estoppel, or waiver, such as patent invalidity, scope of the patents, or antitrust issues of patent misuse and/or price fixing. Pioneer contends that Ottawa has only pleaded defenses of laches, estoppel, waiver, and patent exhaustion, and should not now be permitted to assert any other defenses. Pioneer also contends that the court has already disposed of the patent exhaustion defense in its summary judgment ruling. Furthermore, Pioneer has moved to bar Ottawa from referencing in opening statements, closing arguments, or through testimony of any witness the three defenses that Ottawa *has* pleaded. Pioneer contends that

the defenses of laches, estoppel, and waiver are equitable, and thus, are questions for the court, not the jury. Pioneer also contends that any argument regarding those defenses would create unfair prejudice, confuse the issues, or mislead the jury as to the proper bases for the jury's decisions on damages issues.

Ottawa responds that it would be a waste of judicial resources and prejudicial to Ottawa to force it to introduce evidence of its equitable defenses in separate proceedings. Ottawa contends that the preferred procedure is to permit trial of its equitable defenses to the court, with or without an advisory jury, at the same time that the remaining legal damages claims are tried to the jury. Ottawa also contends that Pioneer had adequate notice that Ottawa is contending that it never sold seed corn covered by certain patents for *inbred* seed corn.

The court agrees with Pioneer that Ottawa's defenses are limited to those that Ottawa has pleaded and the court has not yet resolved: laches, estoppel, and waiver. The court has already disposed of Ottawa's pleaded patent exhaustion defense in its summary judgment ruling. Furthermore, the court agrees with Pioneer that evidence of or reference to the equitable defenses of laches, estoppel, or waiver must be barred in proceedings in front of the jury. Evidence expressly or only directed to such defenses and express reference to such defenses poses a very real risk of unfair prejudice that outweighs any probative value such evidence might have to matters properly before the jury, as well as a risk of misleading and confusing the jury. *See* FED. R. CIV. P. 403. Specifically, admission of such evidence or reference to such defenses might invite the jury to make a determination on the basis of "equitable" considerations that do not properly enter into any determination that the jury must make.

Exclusion of the evidence expressly or only relating to equitable defenses in front of the jury does not deprive Ottawa of any defense or unfairly prejudice Ottawa. First, the court will hear evidence related to the equitable defenses in proceedings outside the pres-

ence of the jury, either on trial days or after the jury trial has concluded. Second, in the interest of judicial economy and economy to the parties, counsel for the parties will be allowed to summarize evidence presented to the jury that is also, in counsel's view, applicable to the court's equitable determinations, so that redundant presentation of evidence can be avoided. Third, because Ottawa asserted the equitable claims, it cannot be heard to complain that it is prejudiced by trial of those claims to the court in separate proceedings.

Therefore, Pioneer's motion in limine regarding Ottawa's defenses will be granted.

### D. Pioneer's Motion To Exclude Evidence Of Statements From State And Federal Agencies

Pioneer has also moved to exclude evidence related to statements Ottawa allegedly received from the Illinois Attorney General's Office and the Federal Trade Commission (FTC) in Chicago. Pioneer notes that Ottawa contends that it contacted both the state agency and the federal agency after Pioneer complained about Ottawa's purchase of Pioneer® brand seed corn in a letter in May 1994 and that Ottawa contends that it was advised by both agencies that its activities were permissible. Pioneer contends that such statements are hearsay and not admissible under any hearsay exception. Pioneer also contends that there is no credible evidence that the conversations ever took place, so that the statements of the agencies are, at the very least, unverifiable. Thus, Pioneer contends that the probative value of such evidence is outweighed by unfair prejudice, and the potential for confusion of the issues or misleading the jury.

Ottawa, however, contends that the statements of officials at the Illinois Attorney General's Office and the FTC are not hearsay, because those statements are not being offered for their truth, but to show that Ottawa took action after Pioneer's letter to determine the lawfulness of Ottawa's conduct. More specifically, Ottawa argues that the fact that it obtained information from the agencies is probative of whether its conduct was "willful," because it suggests that Ottawa acted in good faith. Ottawa argues that if

Pioneer attempts to use the May 1994 letter to show that Ottawa was on notice that Pioneer objected to Ottawa's conduct, it is only fair to let Ottawa show what it did in response to Pioneer's letter to determine whether or not it could continue its course of conduct.

Rule 801(c) of the Federal Rules of Evidence states, " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Rule 802 bars the admission of hearsay, except as provided by law. FED. R. EVID. 802. Rules 803 and 804 then provide a long list of exceptions to the hearsay rule, but Ottawa does not rely on any of those exceptions, instead contending that the statements at issue simply are *not* hearsay.

There is some appeal to Ottawa's contention that any statements that Ottawa's representatives received from officials at the FTC and the Illinois Attorney General's Office simply are not hearsay, because they would not be offered for their truth, *see* FED. R. EVID. 801(c) (hearsay is an out of court statement offered for its truth), but simply to show what Ottawa did in response to Pioneer's May 1994 letter. Moreover, the evidence that Ottawa did do something in response to Pioneer's letter has some probative value on the question of Ottawa's willfulness or good faith. *See* FED. R. EVID. 401 & 402. However, there is an inescapable possibility that the jury could *rely* on the statements purportedly received from the FTC and the Illinois Attorney General's Office for their "truth," *i.e.,* the jury could consider the statements to be evidence that Ottawa was *not* infringing Pioneer's patents, which is not an issue properly before the jury in light of the court's summary judgment ruling that Ottawa has infringed Pioneer's patents as a matter of law. Thus, there is some potential that the probative value of the evidence could be outweighed by a risk of unfair prejudice to Pioneer. *See* FED. R. EVID. 403.

This potential prejudice, however, would be cured by instructing the jury that the court has found that Ottawa infringed Pio-

neer's patents as a matter of law, so that the jury would focus on the proper issue, which is whether or not Ottawa acted "willfully" or in "good faith," not on whether or not Ottawa was actually violating Pioneer's patent rights. Pioneer will also have the opportunity to challenge Ottawa's evidence that any statements were ever received from the state or federal agencies, as well as the value of any such statements in light of the questions posed by Ottawa, where Pioneer contends that there is ample evidence that the questions posed to the agencies left out·key facts concerning Pioneer's reservation of the right to resell seed.

Under these circumstances, neither Rule 802 nor Rule 403 requires exclusion of the evidence in question. Therefore, Pioneer's motion to exclude evidence related to statements Ottawa allegedly received from the Illinois Attorney General's Office and the Federal Trade Commission (FTC) in Chicago will be denied.

### E. Pioneer's Motion To Exclude Evidence Of An Opinion Of Counsel

█ The penultimate motion in limine now before the court is Pioneer's motion to exclude evidence of an opinion of counsel of non-infringement purportedly received by Ottawa. Pioneer acknowledges that an important factor in determining the "willfulness" of infringement is whether the accused infringer sought and obtained competent legal advice before continuing its allegedly infringing activity. *See Ortho Pharm. Corp. v. Smith,* 959 F.2d 936, 944 (Fed.Cir.1992). Pioneer also acknowledges that Ottawa claims to have obtained in September 1998 an opinion of counsel that it was not infringing Pioneer's patents. However, Pioneer contends that any evidence of such an opinion of counsel should be excluded, because Ottawa has refused to disclose the specifics of that opinion on the basis of attorney-client and work-product privileges. Pioneer contends, further, that the trier of fact is entitled to draw adverse inferences from Ottawa's failure to disclose the specifics of the purported opinion of counsel, citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1126–27 (Fed. Cir.), *cert. denied,* 510 U.S. 908, 114 S.Ct.

291, 126 L.Ed.2d 240 (1993). Ottawa's response is that the Federal Circuit Court of Appeals has decided, *sua sponte,* to reconsider *en banc* its precedent concerning drawing adverse inferences with respect to willful patent infringement based on actions of the party charged with infringement in obtaining legal advice and withholding that advice from discovery. *See Knorr–Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 344 F.3d 1336 (Fed.Cir.2003) *(per curiam).* Pioneer, however, argues that any change in the law resulting from the *sua sponte* review of the adverse inference rule by the Federal Circuit Court of Appeals would have only prospective effect.

The court doubts that any change in the adverse inference rule wrought by a forthcoming decision in the *Knorr–Bremse* case would have only *prospective* effect, where the parties in on-going litigation have raised the same issue. However, the court also believes that it is inappropriate for this court to attempt to predict or anticipate what the ruling of the Federal Circuit Court of Appeals may be at some indefinite time in the future. Rather, the court must follow what is controlling law at this time. Moreover, the court believes that the issue of admissibility of Ottawa's purported opinion of counsel presented here is less a question of the continued viability of the adverse inferences rule than it is a question controlled by the balancing of probative value against unfair prejudice under Rule 403 of the Federal Rules of Evidence.

It is clear that an opinion of counsel is relevant to the issue of "willful" infringement, even if it is not the only way of avoiding a finding of "willfulness." *See, e.g., State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1064–65 (Fed.Cir.2003) ("While we have stated that due care is often achieved by seeking the advice of competent counsel and receiving exculpatory advice, *Vulcan Eng'g Co., Inc. v. Fata Aluminium, Inc.,* 278 F.3d 1366, 1378 (Fed.Cir.2002), we have not held that obtaining the advice of counsel is the only means to avoid a finding of willfulness, regardless of the circumstances. *See Kloster Speedsteel, AB v. Crucible, Inc.,* 793 F.2d 1565, 1579 (Fed.Cir.1986)

('[N]ot every failure to seek an opinion of competent counsel will mandate an ultimate finding of willfulness.')."). Controlling law currently holds that asserting privilege or otherwise failing to produce an opinion of counsel may support adverse inferences with respect to willfulness. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126 (Fed.Cir.), *cert. denied*, 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). However, what is more important under Rule 403 is that controlling law also holds that allowing a party to assert privilege as to an opinion of counsel, then admitting evidence of that opinion of counsel, to establish an inference that the party acted in a legally responsible manner with respect to infringement, would prejudice the opposing party. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed.Cir.2001).

Consequently, pursuant to Rule 403, the court will exclude any evidence of Ottawa's purported opinion of counsel, on the ground that its relevance is outweighed by unfair prejudice to Pioneer of allowing Ottawa to assert privilege as to the opinion, then admitting evidence of the opinion, unless Ottawa withdraws its claim of attorney-client or work-product privilege and discloses the documents embodying the purported opinion of counsel of non-infringement by the close of business on Thursday, October 30, 2003.

### F. Ottawa's Motion To Exclude All Evidence of Reasonable Royalties

■ As mentioned above, in the same motion in limine in which Ottawa seeks to exclude evidence from Pioneer's expert Mr. Gemini, Ottawa also moves the court to exclude any evidence of reasonable royalties in the seed industry (docket no. 220). In this part of the motion in limine, Ottawa asserts that the court should preclude Pioneer from offering any evidence at all, opinion or otherwise, with respect to reasonable royalties, because Pioneer refused to disclose during discovery the royalty rates it is paying to third parties, despite Ottawa's requests for that information.

Pioneer clarifies that the royalty rates that it refused to disclose are royalty rates it is paying to third parties, including Monsanto and Dow–MyCogen, for the transgenic traits present in many of its seed products. Pioneer argues, as an initial matter, that the evidence that it has refused to disclose is not relevant to the issues presented in this case. Pioneer also argues that if Ottawa believed that the evidence that Pioneer refused to disclose was relevant, Ottawa should have filed a motion to compel production of the royalty rates in question, but Ottawa did not do so. Consequently, Pioneer contends that Ottawa is not now entitled to use Pioneer's refusal to disclose irrelevant information as a reason to preclude Pioneer from presenting any evidence of a reasonable royalty in this case.

Rule 37 provides that if a party fails to cooperate in discovery, the party requesting discovery may move for an order compelling discovery. *See* FED. R. CIV. P. 37(a)(2). Rule 37 provides, further, that among the permissible sanctions if a party fails to comply with an order compelling discovery is the court's refusal to allow the disobedient party to support or oppose designated claims or defenses or a prohibition on the party's introduction of designated matters into evidence. *See* FED. R. CIV. P. 37(b)(2)(B). However, these sanctions depend upon a party seeking to compel discovery first moving the court for an order compelling discovery and the party opposing discovery refusing to comply with the court's order. *Id.* Here, Pioneer is correct that Ottawa has never moved for an order compelling Pioneer to disclose the royalty information that Pioneer has refused to disclose. Thus, there is no basis for imposing as a sanction pursuant to Rule 37 a bar on Pioneer's presentation of any evidence related to a reasonable royalty in this case. Moreover, the court is not convinced that Ottawa has made a sufficient showing that the evidence of the royalty rates Pioneer is paying to third parties, including Monsanto and Dow–MyCogen, for the transgenic traits present in many of Pioneer's seed products are sufficiently analogous to any reasonable royalty for the right to resell a seed corn product such that the information that Pioneer has refused to disclose is relevant to this case or such that the sanction Ottawa now demands would be appropriate.

Therefore, this portion of Ottawa's second motion in limine will also be denied.

### G. Ottawa's Motion For Advisory Jury

 Finally, the court turns to Ottawa's October 15, 2003, motion for an advisory jury on Ottawa's equitable defenses (docket no. 225), which Pioneer resisted on October 21, 2003. In this motion, Ottawa acknowledges that it is not entitled to a jury on its affirmative equitable defenses of laches, waiver, and estoppel. However, Ottawa argues that, pursuant to Rule 39(c) of the Federal Rules of Civil Procedure, this court may, in its discretion, order the jury to serve in an advisory capacity on issues not otherwise triable to a jury, such as these equitable defenses, and to render an advisory verdict through special interrogatories and verdict forms with respect to those issues. Ottawa argues that its equitable defenses are factually very closely related to its defense to Pioneer's case-in-chief and that it would be a waste of judicial resources, as well as confusing and prejudicial to Ottawa, to force Ottawa to segregate its proofs into two separate and largely duplicative proceedings, one to a jury, and one to the court. Ottawa also argues that, given the complex factual basis for its equitable defenses, it would be preferable to have the jury's opinion on them to serve as an aid to the court.

Pioneer resists the motion for an advisory jury on several grounds. First, Pioneer argues that Ottawa's intended trial strategy appears to be to confuse the jury regarding its infringing conduct. In essence, Pioneer argues that Ottawa is hoping that, by focusing the jury's attention on its contention that Pioneer somehow sat on its rights for too long, the jury will ignore Ottawa's own blatant wrongdoing. Pioneer, therefore, argues that trying the equitable defenses to the same jury, even in an advisory capacity, would be prejudicial to the fair litigation of Pioneer's claims, arising from both a misdirection of the jury's attention to matters not properly within their purview, and from a tendency of the jury to make decisions with respect to damages and willfulness on an improper basis. Pioneer suggests various ways in which the court could try the legal issues to the jury and the equitable issues to

the court without imposing undue additional burdens on the parties.

Rule 39(c) of the Federal Rules of Civil Procedure provides for an advisory jury as follows:

> In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury. . . .

FED. R. CIV. P. 39(c). Just as the court has the discretion to empanel an advisory jury on claims not triable to a jury, the court also has the discretion, pursuant to Rule 42(b), to require separate trials on various issues or claims in a case, as follows:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

FED. R. CIV. P. 42(b).

The court's disposition of Pioneer's motion to exclude evidence of Ottawa's equitable defenses essentially resolves Ottawa's motion for an advisory jury, as well. The court finds that evidence expressly related to, or express references to, the equitable defenses of laches, estoppel, or waiver must be barred in proceedings in front of the jury. Evidence or reference to such defenses poses a very real risk of unfair prejudice outweighing any probative value such evidence might have to matters properly before the jury, or a risk of misleading and confusing the jury. *See* FED. R. EVID. 403. Specifically, admission of such evidence or reference to such defenses might invite the jury to make a determination on the basis of "equitable" considerations that do not properly enter into any determination that the jury must make. Therefore, it is impracticable and potentially prejudicial to Pioneer to try Ottawa's equitable defenses to the jury, in an advisory capacity, at the same time that legal claims are tried to the same

jury. Therefore, the court declines to exercise its discretion to try Ottawa's equitable defenses to an advisory jury.

Rather, pursuant to Rule 42(c), the court deems it appropriate to try Ottawa's equitable defenses separately. Such an approach does not deprive Ottawa of any defense or unfairly prejudice Ottawa. First, the court will hear evidence related to the equitable defenses in proceedings outside the presence of the jury, either on trial days or after the jury trial has concluded. Second, as explained above, in the interest of judicial economy and economy to the parties, counsel for the parties will be allowed to summarize evidence presented to the jury that is also, in counsel's view, applicable to the court's equitable determinations, so that redundant presentation of evidence can be avoided. Third, because Ottawa asserted the equitable claims, it cannot be heard to complain that it is prejudiced by trial of those claims to the court in separate proceedings.

Ottawa's motion for an advisory jury on Ottawa's equitable defenses will, therefore, be denied.

### III. CONCLUSION

Upon the foregoing,

1. Pioneer's motion to exclude evidence regarding settlements between Pioneer and the original defendants in this action (docket no. 212) is **granted**;

2. Pioneer's motion to exclude evidence from Ottawa's proposed expert Mark R. Patterson (docket no. 213) is **granted** to the extent that Mr. Patterson will not be permitted to testify that Pioneer has been fully compensated by prior sales, but is **otherwise denied**;

3. Pioneer's motion to exclude evidence from Ottawa's proposed expert Peter C. Carstensen (docket no. 214) is **granted** to the extent that Mr. Carstensen will not be allowed to testify that Pioneer's use of restrictive licenses would adversely affect the efficient operation of the market, but is **otherwise denied**;

4. Pioneer's motion to exclude evidence on Ottawa's defenses of patent exhaustion, laches, estoppel, waiver, invalidity, and scope of the patents (docket no. 215) is **granted**;

5. Pioneer's motion to exclude evidence from Ottawa's proposed expert Patrick Donahue (docket no. 216) is denied as to any and all of Mr. Donahue's expert opinions, *without prejudice* to Pioneer's right to object at trial should Mr. Donahue stray from the issues on which he is permitted to testify as an expert, which are Ottawa's own profits from its resale of Pioneer ® brand seed corn;

6. Pioneer's motion to exclude evidence related to statements Ottawa allegedly received from the Illinois Attorney General's Office and the Federal Trade Commission in Chicago (docket no. 217) is **denied**;

7. Pioneer's motion to exclude evidence of an opinion of counsel of non-infringement purportedly received by Ottawa (docket no. 218) is **granted** as to any evidence of Ottawa's purported opinion of counsel, unless Ottawa withdraws its claim of attorney-client or work-product privilege and discloses the documents embodying the purported opinion of counsel of non-infringement by the close of business on Thursday, October 30, 2003;

8. Ottawa's motion to exclude opinion testimony of Pioneer's rebuttal expert Jay Kesan (docket no. 219) is **granted** as to testimony of Mr. Kesan concerning the sufficiency of evidence of infringement or willful infringement, but is **otherwise denied**;

9. Ottawa's motion to exclude opinion testimony of Pioneer's expert Joseph Gemini and any evidence of reasonable royalties in the seed industry (docket no. 220) is **denied** in its entirety; and

10. Ottawa's motion for an advisory jury on Ottawa's equitable defenses (docket no. 225) is **denied**.

**IT IS SO ORDERED.**