# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1203
No. 08-1204

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Daniel Edward Cvijanovich, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 13, 2008
Filed: February 25, 2009

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Daniel Edward Cvijanovich appeals from the denial of his motion to dismiss the indictment, his conviction on one count of making threats against the President, a violation of 18 U.S.C. § 871, and the denial of his motion for acquittal or new trial. We affirm.

I.

On May 31, 2006, Cvijanovich pleaded guilty to three counts of damage to government property and one count of threatening to assault a federal official.

According to the plea agreement, on three occasions in 2001, Cvijanovich entered the lobby of the Federal Building in Fargo, North Dakota, and threw a rock through the pane of glass that separates the public area from the secure portion of the building. He attached to each rock a note addressed to the Federal Bureau of Investigation, which is housed in the Federal Building. Cvijanovich admitted that one of the notes was a threat against the FBI. The district court sentenced Cvijanovich to twelve months' imprisonment and three years' supervised release.

At the time the plea agreement was executed, the government knew about certain threats that Cvijanovich allegedly made against President George W. Bush during the President's visit to Fargo on February 2 and 3, 2005. Specifically, the government had information that Cvijanovich was in the parking lot of the venue where the President was speaking, that he was armed with a gun, and that he was considering an assassination attempt. The government agreed not to prosecute Cvijanovich for conduct related to that incident unless it discovered that the defendant's threatening conduct "materially exceed[ed]" what the government knew on May 26, 2006.

While Cvijanovich was incarcerated on the vandalism related charges, he allegedly made statements about killing the President to his fellow inmates, Kyle White, Robby Aldrich, and Gary Zinck, Jr. Special Agent John Kelly of the United States Secret Service investigated the matter and interviewed White, Aldrich, and Zinck. Based on Agent Kelly's investigation, Cvijanovich was charged with three counts of threats against the President, one count for the statements allegedly made to each witness. He was eventually convicted of Count One, which was based on statements made to White:

> In or about November 2006, . . . Daniel Edward Cvijanovich knowingly and willfully made a threat to take the life of the President of the United States, substantially as follows:

-2-

While Daniel Edward Cvijanovich was an inmate at Stutsman County Jail, Jamestown, North Dakota, he stated his intention to kill the President to a fellow inmate, Kyle White, indicating, "All I want to do is kill the President and will not stop until the President is dead. I will continue to try to kill President Bush if he is still the President when I get out of jail. I will travel to any location in my next attempt to kill the President. I know people who can provide me with another gun. I will try to shoot the President in the forehead. I want to kill the President so I will be famous.";

[i]n violation of Title 18, United States Code, Section 871.

Before trial, Cvijanovich moved to dismiss the indictment and to suppress the testimony of White, Aldrich, and Zinck. Cvijanovich argued that the terms of the plea agreement barred the government from prosecuting the crime and from presenting the witnesses's testimony. The district court[1] denied the motion to dismiss, concluding that the plea agreement did not prohibit the prosecution of Cvijanovich for new threats against the President and that the "materially exceeds" provision in the plea agreement did not apply because the threats were not restatements of the February 2005 threats.

The district court determined that any statements Cvijanovich made to White, Aldrich, and Zinck in November 2006 would be admissible at trial, including references to earlier threats against the President. Other evidence of threatening statements, journal entries, or conduct that occurred prior to May 26, 2006, however, would be suppressed in accordance with the plea agreement. The district court ruled that statements or journal entries made after that date might be relevant and thus would not be suppressed categorically.

Before the trial commenced, the government notified Cvijanovich of its intent to introduce evidence of other crimes, wrongs, or acts in accordance with Federal Rule

---

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

of Evidence 404(b). Specifically, the government sought to introduce evidence of Cvijanovich's prior convictions and certain journal entries that Cvijanovich wrote while incarcerated, some of which referred to his February 2005 threats against the President. The government argued that the entries were admissible because they showed intent, among other things.

After the first day of trial, the parties argued the evidentiary issue before the district court. Because Cvijanovich's prior conviction was mentioned in his opening statement, the district court ruled that the conviction and plea agreement were admissible. The district court heard arguments on each of the journal entries, and ruled that the following entries were relevant, that the probative value outweighed the prejudicial effect, and that they would be admissible after redaction:

> It's not that I'm shallow, it's that I'm uppity. That's maybe the best explanation for the anger that led me here. The huge discrepancy between who I felt myself to be and who I wanted to be. If I weren't a natural member of the upper caste, the alphas, then by god, I would set myself apart from, above, the whole herd, with criminality . . . a rampage, an assassination, . . . Even a rock through government glass followed by manipulation of subsequent media coverage.

> I try not to entertain any ill will for anyone anymore, am trying to let go of all personal grudges and to not hate political figures to the point of denying their basic humanity (is George W. Bush a psychopath? I don't think so. He deserves to die, but he is in the end a human being).

At trial, the government presented four witnesses: White, Aldrich, Zinck, and Agent Kelly. Agent Kelly testified about how the Secret Service generally handles threats and about his investigation into Cvijanovich's alleged threats. He said that all threats are taken seriously, and that after a threat has been made, the Secret Service talks to witnesses and conducts a background check on the individual who allegedly made the threat. The investigation continues until the Secret Service is satisfied that

the individual is not a danger to the President.  In the case of repeated threats, the individual is placed at a higher classification level because "we have seen that these people are serious and they will continue on their path until their goal is accomplished, their goal being to assassinate a political figure."  Agent Kelly testified that Cvijanovich was placed at the highest classification level and that "we've got a disturbed individual who was going to try to assassinate the President of the United States."

White testified that he shared a cell with Cvijanovich in Stutsman County Jail and that they discussed their convictions.  White described what Cvijanovich said about his February 2005 threats and his plans to kill the President upon release from prison.  According to White, Cvijanovich wanted to kill the President because "he wanted to be famous and because basically he didn't like what the President was doing, sending soldiers over to Iraq . . . .  He said when he gets out he plans on still killing the President."  White testified that they discussed Cvijanovich's plans several times, including how he would get a gun and where he would shoot the President.  On direct examination, White stated that even though he believed Cvijanovich intended to kill the President, he did not report the threats.  He later testified, however, that he realized that Cvijanovich was serious after describing the jailhouse conversations to Agent Kelly.

White was serving time for assault during his incarceration with Cvijanovich.  White has a lengthy criminal history, and he testified regarding his prior convictions, several of which involved dishonesty and deceit.  White also wrote letters to Agent Kelly and an Assistant U.S. Attorney seeking a sentence reduction for his assistance in the case, and three of those letters were entered into evidence.  Defense counsel vigorously cross-examined White and described him as a "convicted liar" in closing arguments.

The jury was instructed that Cvijanovich was "not on trial for any prior threats that are not acts alleged in the Indictment" and that evidence of any statements or conduct before November 2006 "was merely offered to establish the context in which the witnesses heard the threats alleged in the indictment." The jury was further instructed regarding the burden of proof, the elements of the crime, the definition of threat, and the intent required to knowingly or willfully make a threat. The jury returned a verdict of guilty as to Count One—the statements made to White—and not guilty as to Counts Two and Three, the statements allegedly made to Aldrich and Zinck.

Cvijanovich timely moved for a judgment of acquittal and for a new trial, challenging the sufficiency and credibility of White's testimony. The district court denied both motions and later sentenced Cvijanovich to nineteen months' imprisonment and three years' supervised release.

## II.

On appeal, Cvijanovich argues that the district court erred in denying his motion to dismiss the indictment and his motion for judgment of acquittal or a new trial. Cvijanovich also contends that the district court abused its discretion in admitting evidence of his prior threats against the President and his journal entries. Finally, Cvijanovich argues that he is entitled to a new trial because the government elicited opinion testimony from Agent Kelly regarding whether Cvijanovich's statements constituted a threat.

## A.

Cvijanovich argues that the district court should have dismissed the indictment against him because it violated the terms of his May 2006 plea agreement. Cvijanovich claims that his alleged threats against the President were mere reiterations

of his February 2005 conduct and thus the plea agreement barred the government from prosecuting the counts charged in the indictment. Cvijanovich also contends that the information provided by White, Aldrich, and Zinck did not "materially exceed" the information the government possessed as of the date of the plea agreement.

We review *de novo* the district court's denial of a motion to dismiss the indictment. United States v. Howell, 531 F.3d 621, 622 (8th Cir. 2008). "Issues concerning the interpretation and enforcement of a plea agreement are reviewed de novo." United States v. Paton, 535 F.3d 829, 835 (8th Cir. 2008) (internal quotations omitted). We apply contract principles to analyze and interpret plea agreements, but a plea agreement "is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system and requires the courts to exercise judicial authority in considering the plea agreement." United States v. Norris, 486 F.3d 1045, 1048 (8th Cir. 2007) (en banc) (internal quotations omitted).

The relevant paragraph of the plea agreement states:

[T]he United States will not prosecute the defendant in the District of North Dakota for any conduct concerning any alleged statements, actions or threats to the President of the United States occurring on February 2 and 3, 2005. However, . . . in the event it is discovered that the defendant's conduct in regards to threats or threatening conduct towards the President of the United States materially exceeds what is presently known to the United States, then the United States will be released from this particular commitment.

The conduct alleged in the indictment falls outside the scope of the plea agreement. In return for his guilty plea to charges related to the vandalism of the Federal Building, the government agreed not to prosecute Cvijanovich for crimes related to his February 2005 threatening conduct towards the President. The indictment, however, charged Cvijanovich with making new, specific threats to kill the President upon his release from incarceration. As alleged in the indictment,

Cvijanovich's November 2006 statements were not reiterations of the February 2005 threats, but rather were prospective threats that the plea agreement did not contemplate. Furthermore, the district court correctly concluded that the "materially exceeds" provision of the plea agreement did not apply because the government did not charge Cvijanovich based on his conduct related to the February 2005 incident. Accordingly, the government did not violate the terms of the plea agreement when it charged Cvijanovich with three counts of threats against the President based on his November 2006 statements, and we affirm the district court's denial of the motion to dismiss the indictment.

B.

Cvijanovich argues that the district court erred in denying his motion for judgment of acquittal or new trial because the evidence does not permit the conclusion that Cvijanovich's statements amounted to a threat, as defined in 18 U.S.C. § 871. We review the district court's denial of a motion for judgment of acquittal in the light most favorable to the government, granting the government the benefit of all inferences that reasonably may be drawn from the evidence. United States v. Floyd, 458 F.3d 844, 847 (8th Cir. 2006); United States v. Whitfield, 31 F.3d 747, 749 (8th Cir. 1994); see also United States v. Frederickson, 601 F.2d 1358, 1362 (8th Cir. 1979). We reverse only if no reasonable jury could have concluded beyond a reasonable doubt that the defendant was guilty of the charged offense. Floyd, 458 F.3d at 847; Whitfield, 31 F.3d at 749.

Section 871 makes it a crime to knowingly and willfully make a threat "to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States." The government must establish "that the defendant appreciated the threatening nature of his statement and intended at least to convey the impression that the threat was a serious one. . . . The proof of such intention must turn upon the circumstances under which the statement was made." Frederickson, 601 F.2d at 1363

(quoting Rogers v. United States, 422 U.S. 35, 46 (1969) (Marshall, J., concurring)) (internal quotations omitted). In analyzing threats under § 871, the jury must decide whether "a reasonable recipient, familiar with the context of the communication, would interpret it as a threat." United States v. Bellrichard, 994 F.2d 1318, 1323-24 (8th Cir. 1993) (internal quotations omitted).

Taking the evidence in the light most favorable to the government, we conclude that a reasonable jury could have found Cvijanovich guilty of threats against the President, as charged in Count One. The government presented evidence regarding the context and circumstances in which the statements were allegedly made. White gave inconsistent testimony regarding when he formed a belief that Cvijanovich's threats were serious, but the jury had ample evidence to conclude that a reasonable person would interpret the statement alleged in Count One as a threat. As the district court properly noted, Cvijanovich's argument is not so much that the evidence is lacking, but that White's testimony lacked credibility. "It is the sole province of the jury to weigh the credibility of a witness," United States v. Martinez, 958 F.2d 217, 218 (8th Cir. 1992), and here, the jury was well aware of White's extensive criminal history and other deceptive acts, his cooperation with the government, and his desire for a sentence reduction. The district court thus did not err in denying the motion for acquittal.

Similarly, we affirm the district court's denial of Cvijanovich's motion for new trial. We find no "clear and manifest abuse of discretion" in the district court's ruling, and Cvijanovich has not shown that the evidence at trial weighed "so heavily against the verdict that a miscarriage of justice occurred." See United States v. Howard, 413 F.3d 861, 864 (8th Cir. 2005) (affirming the district court's denial of motions for acquittal and new trial).

C.

Cvijanovich argues that his journal entries and the testimony related to his February 2005 threats should have been excluded pursuant to Federal Rule of Evidence 404(b). Evidence of prior bad acts is admissible when it is "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence; and (4) such that its probative value is not outweighed by any prejudicial impact." United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002); see also Frederickson, 601 F.2d at 1365. We review the district court's 404(b) evidentiary rulings for abuse of discretion, and we reverse "only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." Ruiz-Estrada, 312 F.3d at 403.

Cvijanovich argues that the journal entries and testimony regarding his February 2005 threatening conduct tended to prove only his criminal disposition and as such, should have been excluded. We disagree. The evidence of prior bad acts provided some context for the indicted conduct and was relevant to show Cvijanovich's intent and the seriousness of the threats.

The district court ruled that references to the February 2005 threats would be admissible only to the extent that Cvijanovich referred to the prior incidents in his November 2006 statements. Moreover, the disputed evidence was similar to and close in time to the November 2006 threatening statements. Cvijanovich does not challenge the sufficiency of the 404(b) evidence, other than White's credibility, and he has not shown that any prejudice from the admission of this evidence outweighed its probative value. The district court instructed the jury that Cvijanovich was charged only with the acts alleged in the indictment and that evidence regarding prior threats could only be considered on the issues of Cvijanovich's motive, intent, preparation, plan, knowledge, or absence of mistake or accident. Accordingly, we conclude that the district court did not abuse its discretion in admitting the evidence.

We have also considered Cvijanovich's argument that admitting the above-described evidence violated the terms of the plea agreement. Having concluded that the government did not "prosecute the defendant . . . for any conduct concerning any alleged statements, actions or threats to the President of the United States occurring on February 2 and 3, 2005," we find this argument to be without merit.

## D.

Cvijanovich's final argument is that his case should be remanded for a new trial because Agent Kelly's testimony included prejudicial opinion testimony. Because Cvijanovich did not object on this basis below, we review for plain error.[2] Under plain error review, we reverse only if there has been (1) an error, (2) that is plain, and (3) that affects substantial rights. United States v. Rice, 449 F.3d 887, 894 (8th Cir. 2006); see also United States v. Olano, 507 U.S. 725, 732-36 (1993). For a plain error to affect Cvijanovich's substantial rights, it must be prejudicial. Rice, 449 F.3d at 894. Cvijanovich must prove that his rights were prejudiced, a requirement that normally can be met only by showing that the alleged error affected the outcome of the case. Id.

Citing United States v. Hanna, 293 F.3d 1080 (9th Cir. 2002), Cvijanovich argues that Agent Kelly's testimony that Cvijanovich had been placed at the highest classification level and that "we've got a disturbed individual who was going to try to assassinate the President of the United States" may have led the jurors to conclude that they should defer to his opinion. In Hanna, three Secret Service agents and one police commander testified regarding their expertise in protecting public officials and in assessing whether a particular person constitutes a threat to the President. Id. at

_____

[2]Defense counsel objected to Kelly's testimony on the grounds that it lacked foundation and that it was beyond the scope of the question. Both objections were sustained.

1085.  Over defense counsel's objections, all four law enforcement officials testified that the defendant's writings constituted a threat.  Id.  At one point, the district court endorsed an agent's testimony stating, "I would like the witness to point out . . . what in these exhibits he as an expert in threat assessment considers significant just so the jury knows that they are."  Id.  In Hanna, the jury was called upon to decide "whether a reasonable person in Hanna's position would foresee that his communications would be perceived by those to whom he communicated as serious expressions of intent to harm the President."  Id. at 1086.  The Ninth Circuit concluded that the district court abused its discretion and that Hanna was entitled to a new trial because "[t]he testimony, along with the district court's approval of it, posed a significant danger of misleading the jury into believing that it should judge Hanna's letters from the perspective of a highly trained Secret Service agent instead of from the perspective of an average, reasonable person."  Id. at 1086-87.

Even if we assume that the admission of the disputed testimony constituted plain error, Cvijanovich has not shown that it affected his substantial rights.  Agent Kelly's testimony was not as outcome determinative as that in Hanna.  Agent Kelly was neither offered or endorsed as an expert, nor did his testimony receive the judicial imprimatur that occurred in Hanna.  Moreover, the jury was instructed to apply the reasonable person standard; that is, that a threat must cause apprehension in a reasonable person and that a reasonable person would have foreseen that the statement would be interpreted as a serious intention to harm the President.  Applying these instructions, the jury found Cvijanovich guilty of Count One and not guilty of Counts Two and Three.  Had the jurors deferred to Agent Kelly's testimony, they likely would have convicted Cvijanovich on all three counts.  Given the record we have before us, Cvijanovich cannot show that the alleged error affected the outcome of his case.

## Conclusion

The district court's orders denying the motion to dismiss and the motion for acquittal or new trial are affirmed, as is the judgment of conviction.

_____