# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-3421

_____

United States of America,               *

                                    *

          Appellee,        *

                                    *      Appeal from the United States

     v.                    *      District Court for the

                                    *      Eastern District of Missouri.

Earl Parish,                   *

                                    *          [PUBLISHED]

          Appellant.      *

_____

Submitted: June 12, 2009
Filed: May 24, 2010

_____

Before BYE, HANSEN, and BENTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

Following a jury trial, Earl Parish was convicted of one count of knowingly and intentionally possessing with the intent to distribute a mixture or substance containing a detectable amount of cocaine base (crack), in violation of 18 U.S.C. § 841(a)(1), and one count of knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The district court[1] sentenced Parish to 157

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

months' imprisonment. Parish appeals his convictions and sentence. For the following reasons, we affirm.

## I.

On January 4, 2007, St. Louis Police Officer James Daly and his partner, Officer Joe Mader, received a tip from a confidential informant that a person named "Earl" was selling and distributing narcotics in the Gate District of St. Louis and that "Earl" was known to possess firearms. The confidential informant told the officers that "Earl" drove a newer model Ford Explorer with chrome rims. While Officer Daly listened in, the confidential informant called "Earl" and arranged for "Earl" to deliver crack cocaine on January 5, 2007, at around 8:00 p.m. On January 5, Officers Daly and Mader again met with the confidential informant, who called "Earl" to confirm the sale. During that call "Earl" arranged to meet at 1015 North Grand Avenue, a location in a strip mall.

At approximately 8:00 p.m. on January 5, Officers Daly and Mader, along with Sergeant Kenneth Hornak and Officer Ron Fowlkes, went to the area near the strip mall and set up surveillance. While on surveillance, Sergeant Hornak observed a Ford Explorer matching the confidential informant's description pulling into the parking lot at 1015 North Grand Avenue. Sergeant Hornak and Officer Fowlkes, both in uniform, parked their unmarked police truck behind the Explorer at an angle. Officer Fowlkes got out of the truck and approached the Ford Explorer, identifying himself as a police officer. The driver (later identified as Earl Parish) looked at Fowlkes, placed the Explorer in reverse, and accelerated backward out of the parking space, ramming the police truck and knocking Sergeant Hornak to the ground. Parish also hit an occupied Ford Taurus backing out of a parking space. Parish attempted to flee the area in the Explorer, but the Explorer had become wedged into the police truck and could not accelerate forward. While the police officers were removing Parish from the vehicle, Parish ended up on the ground and banged his head. Officer Fowlkes took custody

of Parish, and Officers Daly and Mader searched Parish's vehicle. On the floorboard of the driver's side of the vehicle, they observed two plastic bags, one containing what appeared to be crack cocaine and one containing what appeared to be compressed cocaine. The officers also found a fully loaded firearm under the passenger's seat and a digital electronic scale under the front driver's side seat. The officers arrested Parish for assault on a law enforcement officer, narcotics offenses, and a firearms offense. Parish was charged with one count of knowingly and intentionally possessing with the intent to distribute a mixture or substance containing a detectable amount of cocaine base (crack) and one count of knowingly possessing a firearm in furtherance of a drug trafficking crime.

During the trial, the Government's evidence included testimony from Officer Daly, Sergeant Hornak, Margaret Owens (a forensic drug chemist who testified that the substance seized from Parish's car was 11.74 grams of cocaine base or crack cocaine), and Detective Michael Bradley (a detective assigned to the Drug Enforcement Administration Task Force who testified as to the "street value" of the drugs found in Parish's car, that the quantity of crack cocaine was a distribution as opposed to a user amount, and that the other items found in the car (a scale and a firearm) were consistent with items possessed by drug dealers).

At the close of the Government's case-in-chief, Parish unsuccessfully filed a motion for acquittal, which he renewed at the close of evidence and which was again denied. The jury found Parish guilty, and the district court imposed a sentence of 97 months' imprisonment on the drug count and 60 months' imprisonment on the firearms count, to be served consecutively. Parish appeals his convictions and sentence.

II.

A.

Parish first argues that the district court erred in limiting Parish from questioning the police during the Government's case-in-chief about Parish's claims that he was beaten and that the incriminating evidence was "planted" by the arresting officers.

Before the trial began, Parish's counsel stated that he intended to question the police about the alleged beating and to suggest that the police planted the evidence because Parish wanted to complain about the beating. The Government filed a motion in limine to prevent Parish from asking the police about those claims before Parish had testified to them and raised those allegations as part of his defense. In ruling on the motion in limine, the district court assumed that the officers would, on cross-examination during the Government's case-in-chief, deny that they had either beaten Parish or planted the evidence, and the district court was concerned that Parish would base his later jury argument on the content of the cross-examination questions asked, rather than on any actual evidence of either event. The court indicated that it wanted some foundation established for the admission of such evidence because "what people say and argue on motions, particularly motions in limine, typically by my experience, is radically different from how things actually pipe out, as it were." (Trial Tr. at 9-10.) The court further stated that "as things go along, and if foundation can be established for the admission of this stuff, that's a whole other issue. For right now, I'm not going to get into it, especially during voir dire or opening statements." (Id. at 10.)

During the cross-examination of Officer Daly by Parish's counsel, Officer Daly testified that while Parish was being "extracted" from the Ford Explorer by the officers, Parish's face hit the pavement, that he was injured, and that a paramedic was

notified. No attempt was made by Parish's counsel to question whether or not the injuries were caused by a beating, nor did counsel seek permission from the court to ask such questions once the existence of Parish's injuries while being taken down by the officers was opened up. On redirect, the Government's attorney questioned Officer Daly about the extent of Parish's injuries, and no recross-examination was undertaken by Parish's counsel, nor was an attempt made to explore the extent of the limine ruling. During the defense's case, Parish testified that the police used physical force against him and took turns beating him at the scene, that he was seriously hurt, and that the police refused to take him to a hospital. He denied having drugs, a gun, or a scale in his vehicle and claimed he was at the strip mall to drop off his two sons at a barber shop. He denied ramming the police truck and striking another car. On cross-examination by the Government's counsel, Parish reasserted that the officers took turns beating him, that he sustained a lot of swelling to the back of his head, his forehead, and his face and that his lip was "busted open." The subject was not explored on redirect. In its rebuttal case, the Government presented the supervising officer at the scene who denied any beating had taken place, and who testified that Parish's booking photograph did not bear out the extensive injuries Parish claimed he suffered. Cross-examination was directed to the proposition that the booking photo did not depict the back of Parish's head or part of one side of his face where he claimed injury.

Under Federal Rule of Evidence 103(a), "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Our review of the pretrial ruling made by the district court convinces us that it was "definitive" only in the sense that it applied to voir dire and opening statements and not to the offer of testimony or evidence during the trial. The district court left open the option for Parish to lay a foundation for the admission of the disputed evidence, and indeed, when the arresting officer testified during Parish's counsel's cross-examination concerning how Parish was extracted from his vehicle and taken to the

ground, such a foundation was available for further leading questioning about the extent of the officers' manhandling of Parish, contesting the officers' benign version, and including direct questions about a beating. None occurred.

We review the district court's evidentiary rulings, including its rulings on motions in limine, for an abuse of discretion. United States v. Fincher, 538 F.3d 868, 872 (8th Cir. 2008), cert. denied, 129 S. Ct. 1369 (2009). Because the district court left open the question of the later admission of the evidence as the trial record developed, we see no abuse of discretion in its ruling. Nor do we find any error of any kind in the court's limine ruling. It appears to us from a review of the record that Parish was able to present to the jury all the evidence supporting his claimed beating and his contention of planted evidence for whatever purposes he desired to make of it.

Parish also claims that the district court violated his Sixth Amendment right of confrontation by granting the Government's motion in limine, and we apply a harmless error standard of review. See United States v. King, 36 F.3d 728, 732 (8th Cir. 1994) ("Because [the defendant] alleges a violation of his right to confrontation under the Sixth Amendment, we apply the harmless error standard from Chapman v. California, 386 U.S. 18, 25 (1967)."). Before we can determine that an error is harmless, we "'must be able to declare a belief that it was harmless beyond a reasonable doubt.'" Id. (quoting Chapman, 386 U.S. at 24). Here, Parish testified to the beating and suggested during his testimony that his request for medical care was related to the decision to charge him with possession of the drugs and firearm. The jury thus heard the evidence Parish wished to elicit from Officer Daly and Sergeant Hornak. Accordingly, we conclude that any error was harmless beyond a reasonable doubt.

-6-

B.

Parish next argues that the district court erred in denying his motion to suppress evidence obtained from the search of his vehicle because the police lacked probable cause to arrest him and thus search his vehicle.

In reviewing a denial of a motion to suppress, we review the district court's factual determinations for clear error and its legal conclusions *de novo*. United States v. Velazquez-Rivera, 366 F.3d 661, 664 (8th Cir. 2004). The existence of probable cause is a mixed question of law and fact that we review *de novo*. Id.

The Supreme Court has held "that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Arizona v. Gant, 129 S. Ct. 1710, 1719 (2009) (quoting Thornton v. United States, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). Thus, we must first determine whether the police had probable cause to arrest Parish. "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." Velazquez-Rivera, 366 F.3d at 664.

The information about the impending drug transaction supplied by the confidential informant and corroborated by the police, constituted probable cause. Officer Daly spoke to the informant in person, and he listened to the telephone conversation in which the confidential informant arranged the drug deal with "Earl." The informant's statement that "Earl" drove a Ford Explorer with chrome rims and would meet him at 1015 North Grand Avenue at 8:00 p.m. to "do the deal" was corroborated when a vehicle matching the description pulled into the parking lot at that address at that time. Moreover, when Parish saw Officer Fowlkes approach his vehicle, Parish attempted to flee. The corroborated information therefore supported

-7-

probable cause to arrest Parish for a drug offense.  See id. at 664 (explaining that probable cause was supported by informant's tips that the police corroborated and by the defendant's attempts to evade the police by "evasive driving" and disguising himself); United States v. Sherrill, 27 F.3d 344, 347 (8th Cir. 1994) (same).[2]

Since the police had probable cause to arrest Parish on the drug charges, Parish's arrest was lawful.  Because the only purpose of the arranged meeting was for Parish to distribute drugs, the police had probable cause to believe that evidence relevant to the drug crime would be found in the vehicle.  See Gant, 129 U.S. at 1719 (distinguishing Thornton and New York v. Belton, 453 U.S. 454 (1981), where the defendants were arrested for drug offenses, from Gant, where the defendant was arrested for driving with a suspended license, an offense for which there is "no reasonable basis to believe the vehicle contains relevant evidence").  Thus, the search was justified.  See id.; cf. United States v. Martinez-Cortes, 566 F.3d 767, 771 n.3 (8th Cir. 2009) (explaining that Gant severely limited officers' authority to conduct a search of a vehicle incident to arrest when the arrest occurred outside of the vehicle, but holding that there was "probable cause to believe that contraband or other evidence of drug crimes would be found in the stopped vehicle, which was an independent basis for conducting a warrantless search of the vehicle").  The testimony showed that the drugs were in two clear plastic baggies in plain view on the driver's side floor board, and the electronic scale was sitting under the driver's seat.  Therefore, the district court did not err in denying Parish's motion to suppress.

---

[2]We reject as untrue Parish's contention in his brief that "[t]he police did not verify any of the informant's information before stopping Mr. Parish."  (Appellant's Br. at 29.)  In fact, the police did verify the information before stopping and arresting Parish.

C.

Parish further claims that the district court erred in allowing Officer Daly to testify that the confidential informant told him that a drug deal would occur at 1015 North Grand Avenue, arguing that the testimony was impermissible hearsay and violated his right of confrontation under the Sixth Amendment.

We review the admission of evidence for an abuse of discretion. Velazquez-Rivera, 366 F.3d at 666. "Even if the district court erred in admitting the evidence, we will not reverse if the admission of the evidence was harmless." Id.

Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The challenged testimony was not offered for the truth of the matter asserted—that a drug deal would occur—but to establish why the officers were surveilling the area. We have previously explained that "[a]n out-of-court statement used to explain why police took a certain action in their investigation is not hearsay." Velazquez-Rivera, 366 F.3d at 666 (holding that testimony explaining how the police came to be surveilling a particular location based on an informant's tip was not hearsay).[3] Thus, the district court did not abuse its discretion in admitting Officer Daly's testimony to explain why the police were surveilling the area.

---

[3] We note that the district court did not give a limiting instruction to the jury to prevent the jury from considering the out-of-court statements for the truth of the matter asserted. However, the court did not give a limiting instruction because at the close of evidence, Parish's attorney stated that he "believe[d] that this instruction [was] unnecessary" because the parties "did not get into substantial issues about a confidential informant. The Government didn't emphasize a confidential informant in their portion of the case," and the Government subsequently withdrew its proposed limiting instruction. (Trial Tr. at 225.)

Because Parish also claims that his Sixth Amendment right was violated, we must apply a harmless error standard. See King, 36 F.3d at 732 ("Because [the defendant] alleges a violation of his right to confrontation under the Sixth Amendment, we apply the harmless error standard from [Chapman, 386 U.S. at 25]."). As we explained above, before we can determine that an error is harmless, we "'must be able to declare a belief that it was harmless beyond a reasonable doubt.'" Id. (quoting Chapman, 386 U.S. at 24). The rest of the evidence against Parish was overwhelming. He was found with drugs, a digital scale used to weigh drugs for distribution, and a loaded firearm, all in his vehicle and all under his control. Even if the admission of Officer Daly's testimony violated Parish's right of confrontation, a conclusion we do not make, the error was harmless beyond a reasonable doubt, and we are therefore not required to reverse Parish's conviction. See King, 36 F.3d at 733.

D.

Parish next challenges the jury instructions. We review the district court's instructions to the jury for an abuse of discretion. United States v. Lalley, 257 F.3d 751, 755 (8th Cir. 2001). We will affirm "[i]f the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." Id.

The district court gave Instruction 12, covering opinion evidence from expert witnesses, which stated:

> You have heard testimony from persons described as experts. Persons who, by knowledge, skill, training, education or experience, have become expert in some field may state their opinions on matters in that field and may also state the reasons for their opinion.
>
> Expert testimony should be considered just like any other testimony. You may accept or reject it, and give it as much weight as you think it deserves, considering the witness's education and

experience, the soundness of the reasons given for the opinion, the acceptability of the methods used, and all the other evidence in the case.

(Appellant's Add. at 7.)  The court later gave Instruction 22, which stated:

Under the statute upon which the indictment is based, the phrase "with intent to distribute" means to have in mind or to plan in some way to deliver or transfer possession or control over a thing to someone else.

In attempting to determine the intent of any person you may take into your consideration all the facts and circumstances shown by the evidence received in the case concerning that person.

In determining a person's "intent to distribute" a controlled substance, the jury may consider, among other things, the quantity of the controlled substance, the "street value" of the controlled substance, the lack of drug user paraphernalia, the presence of other controlled substances, the presence of a firearm, and the presence of an electronic scale.

The government must prove, beyond a reasonable doubt, that the defendant intended to distribute the controlled substance alleged in the indictment.

(Id. at 8.)

Parish argues that the district court erred in giving the jury Instruction 22 because, when combined with Instruction 12, Instruction 22 improperly confused the jury by highlighting the testimony of the Government's expert, Detective Bradley. Parish claims that the third paragraph of Instruction 22 persuaded the jury not to treat Detective Bradley's just like any other testimony because it so closely tracked Detective Bradley's testimony.

However, Instruction 22 simply explained the evidence the jury could consider when determining whether Parish acted with intent to distribute. Parish offers no caselaw to support the claim that Instruction 22 confused the jury, and he does not claim that Instruction 22 improperly stated the law. See, e.g., United States v. Ryder, 414 F.3d 908, 917 (8th Cir. 2005) ("Because the instructions as given properly informed the jury of the law to be applied to the case, the district court did not abuse its discretion."). The instructions, taken as a whole, fairly and adequately submitted the issues to the jury. See Lalley, 257 F.3d at 755. Accordingly, we conclude that the district court did not abuse its discretion in giving Instruction 22.

E.

Parish also argues that the district court erred in refusing to grant his motions for judgment of acquittal on the two counts because the Government failed to present sufficient evidence to convict him.

We review the district court's denial of a motion for judgment of acquittal *de novo*, viewing the evidence in the light most favorable to the jury's verdict, and drawing all reasonable inferences in the Government's favor. United States v. Saddler, 538 F.3d 879, 886 (8th Cir.), cert. denied, 129 S. Ct. 770 (2008). We reverse a conviction "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Kent, 531 F.3d 642, 652 (8th Cir. 2008).

Here, Officer Daly testified that after removing Parish from the Ford Explorer, he and Officer Mader observed what appeared to be crack cocaine on the floorboard of the driver's side of the vehicle and, after searching the vehicle, found a loaded firearm in the vehicle. The Government's expert chemist testified that the substance was 11.74 grams of crack, or cocaine base. The Government also presented testimony from an expert, Michael Bradley, that such a large quantity of cocaine base was likely intended for distribution, rather than personal consumption. Bradley also explained

that the presence of a scale and a firearm in close proximity to the drugs suggested that the drugs were to be sold in smaller amounts.

We conclude that the Government presented sufficient evidence to convict Parish on the two counts, and we reject Parish's claim that no reasonable jury could have found him guilty beyond a reasonable doubt. Therefore, we conclude that the district court did not err in denying Parish's motions for judgment of acquittal based on insufficient evidence.

F.

Parish next argues that the Government failed to establish that his possession of a firearm was "in furtherance of" the underlying drug crime and the district court thus erred in denying his motions for acquittal.

"A conviction for possessing a firearm in furtherance of a drug trafficking crime requires that the government prove a nexus between the defendant's possession of the firearm and the drug crime." United States v. Close, 518 F.3d 617, 619 (8th Cir. 2008). "[T]he jury may infer that the firearm was used in furtherance of a drug crime when it is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking." Id. Parish correctly points out that we have held that "in furtherance of" is a higher standard than "during and in relation to," but we have explained that it is "only a *slightly* higher standard." Kent, 531 F.3d at 656.

Here, there was testimony that the loaded firearm was close to the crack and cocaine when Parish was arrested. There was also testimony from an experienced narcotics investigator that drug dealers typically keep firearms close at hand to protect their drugs and their cash receipts. See, e.g., Close, 518 F.3d at 619-20 (upholding a conviction for possessing a firearm in furtherance of drug trafficking where police

found three guns and methamphetamine packaged for sale in Close's bedroom and a witness testified that firearms are used by drug dealers to protect their money and drugs); United States v. Lindsey, 507 F.3d 1146, 1148 (8th Cir. 2007) (per curiam) (upholding a conviction for possessing a firearm in furtherance of a drug trafficking crime where police witnessed the defendant sitting in a car holding crack cocaine and a later search revealed a firearm beneath the car seat in which the defendant was sitting), cert. denied, 128 S. Ct. 1328 (2008). Accordingly, we conclude that the Government presented sufficient evidence to establish that Parish's possession of a loaded firearm was in furtherance of the underlying drug crime and that the district court did not err in denying his motions for acquittal.

G.

Parish further argues that the district court committed plain error in allowing Detective Michael Bradley, the Government's expert witness on drug distribution techniques, to impermissibly testify regarding Parish's mental state. Because Parish did not object to Detective Bradley's testimony during the trial, we review for plain error. When reviewing for plain error, "we reverse only if there has been (1) an error, (2) that is plain, and (3) that affects substantial rights." United States v. Cvijanovich, 556 F.3d 857, 864 (8th Cir. 2009). To affect Parish's substantial rights, the error must have affected the outcome of the case. See id. at 864-65.

To establish possession with intent to distribute, the Government must show that Parish "knowingly or intentionally" possessed a controlled substance with the intent to distribute. 18 U.S.C. § 841(a). During the trial, the Government asked Detective Bradley:

> Based on your years of experience in narcotics law enforcement and in being involved in undercover purchases and sales of crack cocaine, and in talking about defendants and confidential informants, and based on your own individual review of [the crack cocaine], are you able to form

-14-

an opinion as to whether just based on that amount,[the crack cocaine] would have been intended for distribution or personal use?

Detective Bradley responded, "I believe it would be intended for distribution." (Trial Tr. at 140-41.)

Federal Rule of Evidence 704(b) states that "[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." "Testimony that, when combined with other evidence, might imply or otherwise cause a jury to infer this ultimate conclusion, however, is permitted under the rule." United States v. Vesey, 338 F.3d 913, 916 (8th Cir. 2003). Bradley's testimony concerned the amount; like the Government's expert witness in Vesey, he did not directly testify to Parish's intent, although the jury was free to infer the ultimate conclusion.

Even if we assume that the district court committed plain error by allowing Detective Bradley to testify that he believed the amount would have been intended for distribution, Parish fails to establish that the error affected the outcome of the case. Even without Detective Bradley's testimony regarding whether the amount was an amount intended for distribution, the lack of drug user paraphernalia and the presence of the loaded firearm and the electronic scale all support the conclusion that the drugs were intended for distribution, rather than for Parish's personal use. See United States v. Booker, 576 F.3d 506, 509 (8th Cir. 2009) (noting that the "absence at the scene of arrest of any paraphernalia required to smoke crack cocaine" supported the contention that the defendant intended to distribute the crack cocaine rather than use it personally), cert. denied, 78 U.S.L.W. 3320 (U.S. Nov. 30, 2009); United States v. Goodman, 509 F.3d 872, 876-77 (8th Cir. 2007) (noting that the presence of a scale and a firearm are associated with the distribution of narcotics). Therefore, we conclude that even if the error was plain, it did not affect Parish's substantial rights,

as it did not affect the outcome of the case. See Cvijanovich, 556 F.3d at 865 ("Given the record we have before us, [the defendant] cannot show that the alleged error affected the outcome of his case.").

## H.

Finally, Parish challenges his sentence. The Presentence Investigation Report ("PSR") calculated a base offense level of 24 based on the 11.74 grams of cocaine base found in Parish's vehicle. Parish objected to this base offense level, but the district court overruled his objection and used the base offense level of 24 to calculate an advisory Guidelines range of 97 to 121 months' imprisonment on the drug count.

We review the district court's sentence for procedural soundness and for the substantive reasonableness of the sentence imposed. Saddler, 538 F.3d at 889. We must first ensure that the district court did not commit a significant procedural error, such as failing to calculate or improperly calculating the advisory Guidelines range, treating the advisory Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, imposing a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. Id. If the sentence is procedurally sound, we must then review the substantive reasonableness of the sentence. Id.

First, Parish asserts that the district court erred by treating the Guidelines as mandatory. At the sentencing hearing, the district court referred to the Guidelines as advisory and later engaged in a thorough discussion of its ability to vary from the advisory Guidelines. Thus, there is no evidence that the district court committed procedural error by treating the advisory Guidelines as mandatory.

Second, Parish claims that the district court erred because it did not know that it could have imposed a lesser sentence under § 3553(a) after Kimbrough v. United States, 552 U.S. 85 (2007). "[A] district court that is aware of an argument does not

abuse its discretion by not considering it." <u>United States v. Roberson</u>, 517 F.3d 990, 995 (8th Cir. 2008). "When a district court does not consider an argument because it is unaware of its power to do so, however, a remand is appropriate." <u>Id.</u> Here, there is no evidence that the district court was unaware of its power to impose a lesser sentence such that we must remand for resentencing. In his objections to the PSR, Parish argued that the base offense level "should be set at a level equivalent or closer to an equal amount of cocaine powder, as noted to be within the Court's discretion in Paragraph 120 of the [PSR] as to meet the sentencing objectives as expressed in <u>Kimbrough</u>." (Dist. Ct. R. at 37.)   Paragraph 120 of the PSR set out what the sentencing range would be for an equivalent amount of powder cocaine (27-33 months). Here, however, the jury found Parish guilty of possessing more than 5 grams of crack cocaine. The district court was required to impose at least the statutory mandatory minimum sentence of 60 months on the drug count under 21 U.S.C. § 841(b)(1)(B)(iii).   The district court rejected Parish's argument, explicitly acknowledging its discretion to vary. While the district court did not state outright that it knew that it had the authority to vary based on policy disagreements with the advisory Guidelines, we presume from Parish's citation to <u>Kimbrough</u> and its own reading of Paragraph 120 that the district court was aware of its authority and chose not to vary downward. <u>See</u> <u>United States v. Gray</u>, 533 F.3d 942, 943 (8th Cir. 2008) ("[W]e presume that 'district judges know the law and understand their obligation to consider all of the § 3553(a) factors.'" (quoting <u>United States v. Carty</u>, 520 F.3d 984, 992 (9th Cir.) (en banc), <u>cert. denied</u>, 128 S. Ct. 2491 (2008))); <u>cf.</u> <u>United States v. Miles</u>, 499 F.3d 906, 909 (8th Cir. 2007) (explaining that the district court properly considered the § 3553(a) factors where "the sentencing record demonstrates that the district court heard extensive arguments" from the parties as to the factors). Here, the district court indicated that the circumstances of the offense were "not pretty" and "fraught with peril" and that it had considered and weighed all of the § 3553(a) factors before it overruled Parish's request for a variance and imposed a bottom-of-the-Guidelines-range sentence on the drug count. (Sent. Tr. at 16.)

Third, Parish argues that the sentence was unreasonable in light of Kimbrough and the disparity in treatment of crack and powder cocaine in the advisory Guidelines. Parish correctly notes that after Kimbrough, a district court may conclude that the disparity in sentence between crack cocaine and powder cocaine yields a sentence greater than necessary and may impose a sentence below the advisory Guidelines range. Even more recently, in Spears v. United States, 129 S. Ct. 840, 843 (2009), the Supreme Court again explained that a district court has the "authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them" and in sentencing a defendant it may substitute a ratio the district court finds more appropriate. However, while the Supreme Court has made clear that a district court *may* reject the 100-to-1 crack cocaine to powder cocaine ratio, a district court is not required to do so. See United States v. O'Connor, 567 F.3d 395, 398 (8th Cir.) ("[E]ven 'assuming that a sentencing court *may* disregard [a guideline] on pure policy grounds, Kimbrough and Spears do not hold that a district court *must* disagree with any sentencing guideline, whether it reflects a policy judgment of Congress or the Commission's 'characteristic' empirical approach.'" (quoting United States v. Barron, 557 F.3d 866, 871 (8th Cir. 2009) (second alteration in original))), cert. denied, 130 S. Ct. 480 (2009); see also Saddler, 538 F.3d at 891 ("[A] district court does not abuse its discretion when it fails to consider the crack/powder sentencing disparity."); United States v. Johnson, 517 F.3d 1020, 1024 (8th Cir. 2008) ("Although Kimbrough empowers a district court to consider the disparity between guideline sentences for powder cocaine and crack, it does not require it to do so."). Here the district court was compelled by Congress to impose at least a sentence of 60 months on the drug count. Accordingly, we conclude that the district court did not commit an error under Kimbrough or Spears and did not abuse its discretion in imposing a bottom-of-the-advisory-Guidelines-range sentence of 97 months' imprisonment on the drug count.

III.

Accordingly, the judgment of the district court is affirmed.

BYE, Circuit Judge, dissenting.

Although I agree with the conclusions reached by my colleagues on all other issues before the court, I believe the district court erred in failing to recognize the full extent of its discretion under Spears v. United States, 129 S. Ct. 840 (2009) and I would therefore reverse and remand for resentencing. In Spears, the Supreme Court held that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines" even in a "mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range." Id. at 843-45.

Here, the district court stated at sentencing:

> Some people think that when a judge has discretion … it means that they can do what they want to do just because they have the power to do it. That is a misconception of what discretion is. Discretion means some leeway. It means that the judge has the authority or the ability to do something a little different that than what might ordinarily be done, and you got to have a reason to do that. You must have a justifiable reason to do that. You can't do it just because it's your whim or just because you want to be nice or just because you feel sorry for somebody or because you even have some empathy for them. It has to be justified from the facts and within the law.

This statement indicates to me the district court did not believe it had the authority to vary categorically from the Guidelines on the basis of the crack/powder cocaine sentencing disparity in the absence of "particular circumstances." As a result of the district court's failure to adequately recognize the extent of its own authority, I would vacate Parish's sentence and remand for resentencing, thereby permitting the district court to impose a sentence with full awareness of its authority under Spears. See United States v. Johnson, 553 F.3d 990, 996 (6th Cir. 2009).

I therefore respectfully dissent.

_____