_____NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0564n.06

**No. 09-5220**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     **Plaintiff-Appellee,**

**v.**

**DARIUS HARRIS,**

     **Defendant-Appellant.**

                                   /

**FILED**

**Aug 27, 2010**

LEONARD GREEN, Clerk

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY**

**OPINION**

BEFORE:    COLE and CLAY, Circuit Judges; KATZ, District Judge.[*]

    **CLAY, Circuit Judge.** Defendant Darius Harris appeals his conviction for possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). Defendant pleaded guilty to possessing five or more grams of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) but proceeded to a bench trial on the firearm charge. Defendant challenges the sufficiency of the evidence presented on the gun count and the admission of expert testimony from a police detective. For the following reasons, Defendant's conviction is **AFFIRMED**.

## BACKGROUND

    On March 23, 2006, police sought out Defendant for questioning in a homicide investigation. During an interview away from his residence, Defendant admitted that he sold narcotics from his

---

    [*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

residence and that he owned several firearms. Police executed a search warrant on Defendant's residence that evening. In executing the warrant, the police found multiple loaded handguns, a clip containing 9 millimeter ammunition, and a baggie of crack cocaine on top of a dresser in the basement. One of the handguns, a loaded .25 caliber pistol, was located only two to three inches from the baggie of crack cocaine. The police found three loaded handguns inside an armoire immediately adjacent to the dresser with the crack cocaine. The police also found a loaded rifle and an unloaded 12 gauge shotgun.

Defendant was indicted for possessing with the intent to distribute five or more grams of crack cocaine and possessing a firearm in furtherance of the drug trafficking offense. Defendant pleaded guilty to the drug trafficking charge on September 9, 2008 but chose to proceed to a bench trial on the firearm offense. A bench trial was held on September 29, 2008.

Harris admitted to owning both the drugs and the guns but argued that the guns were not possessed to further his drug activities. Specifically, Defendant testified that he began collecting guns before he sold drugs and that he shared his gun collecting hobby with his cousin, a soldier.[1] According to Defendant, the guns were necessarily near the drugs because Defendant lived in the one-room basement of a residence that included a sofa, washer/dryer, utility sink, dressers, and several televisions sitting in front of one another.

The government relied on Sergeant Bill Birkenhauer to provide expert testimony on differences between gun collectors and drug dealers who own guns to further their drug trafficking offenses. Birkenhauer testified that drug traffickers tend to have "cheaper," small caliber handguns, that they store in easily accessed locations, while collectors tend to put their guns in display

---

[1]Defendant also argued that the handgun on top of the dresser belonged to his live-in girlfriend, an Amanda Downs. The district court rejected this contention, and Defendant does not contest that finding in this Court.

cabinets.[2] Birkenhauer not only spoke in generalities but gave his specific opinion on the purpose of Defendant's guns.

Q:      Based on your review of the evidence, discussions that you've had, your training, your experience, do you have an opinion, based upon a reasonable investigative certainty as a narcotics investigator, regarding the connection between these guns and the crack cocaine that was found in the residence with the guns?

A:      I do

Q:      What is that opinion?

A:      I believe the guns were used to protect drugs and their proceeds.

(R. 59 at 80). At trial, Defendant did not object to Birkenhauer's statement. Defendant had previously lodged an objection as to Birkenhauer's qualifications to testify as an expert witness. The district court overruled the objection, inviting Defense counsel to discuss Birkenhauer's qualifications on cross-examination.

The district court issued Findings of Fact, Conclusions of Law, and a Verdict on September 30, 2008 that found Defendant guilty of possessing a firearm in furtherance of a drug trafficking offense. The district court specifically found that Defendant lacked credibility in testifying that the guns were possessed for collection purposes. Defendant was subsequently sentenced to 124 months of imprisonment, sixty months for the drug offense and sixty-four months, to run consecutively, for the gun offense. This timely appeal followed.

---

[2]This testimony may be somewhat problematic because it presupposes that poorer people cannot collect guns, since people with less money who exercise their right to own a gun will undoubtedly have "cheap" guns.

**DISCUSSION**

**A.      Sufficiency of the Evidence**

In reviewing the sufficiency of the evidence after a bench trial, "the test is whether the evidence is sufficient to justify the trial judge, as trier of facts, in concluding beyond a reasonable doubt that the defendant was guilty." *United States v. Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992) (citation and quotation omitted). In a criminal bench trial, "factual findings made by the trial judge stand unless determined to be so clearly erroneous as to justify overturning the conviction." *United States v. Baydoun*, 984 F.2d 175, 179 (6th Cir. 1993). "When reviewing a conviction on appeal, this Court resolves all conflicts in the testimony in favor of the government and draws every reasonable inference in its favor." *United States v. Doe*, 226 F.3d 672, 680 (6th Cir. 2000).

Defendant argues that the government failed to produce sufficient evidence of a nexus between the firearms and the drug trafficking offense. This Court's case law is clear that possession of a firearm by a drug trafficker is insufficient to violate the relevant statute. Section 924(c)(1) requires possession "in furtherance of" the offense, which shows that "Congress intended a specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Defendant argues that the government only showed proximity, and since Defendant lived in a small, cluttered residence, any firearm he possessed for a legitimate reason still would have been close in proximity to any drugs.

The foundation of Defendant's argument is language in *Mackey* that "the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction." *Id*. However, while proximity is not by itself sufficient, other factors in *Mackey* weigh against Defendant. The Court recognized that the gun "must be strategically located so that it is quickly and easily available for use" and that other factors

to consider were "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id*.

In this case, three crucial pieces of evidence counsel in favor of affirming the conviction. First, Defendant admitted to dealing drugs out of the window of his basement residence. Therefore, he did not merely store both drugs and guns at his residence, but the residence itself was central to his drug activity. Second, at least one gun was located in extremely close physical proximity to crack cocaine. Detective Angela Keller testified that one gun was found immediately adjacent to crack cocaine on a dresser in Defendant's residence. Third, all five handguns that were found were loaded and not safely secured, meaning they could be used immediately to protect Defendant's drugs and were not consistent with how gun collectors normally store their guns.

Many of these same factors were also present in *United States v. Couch*, 367 F.3d 557 (6th Cir. 2004), where this Court found sufficient evidence supported the defendant's conviction. In *Couch*, police discovered a loaded assault rifle in the living room where the defendant was arrested in possession of Oxycontin and methamphetamine. In addition, several guns were found in a garage where the defendant conducted drug sales. Finally, police testified that one of the firearms was commonly associated with drug trafficking. Based on these facts, the court concluded that "any rational trier of fact could have concluded that the United States proved the elements of the crime beyond a reasonable doubt." *Id*. at 561.

Defendant ignores *Couch* and instead relies on the readily distinguishable *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009). In *Bailey,* this Court reversed a conviction finding insufficient circumstantial evidence to support the conviction for possessing a gun in furtherance of a drug crime. The government in *Bailey*, however, failed to ever prove that the defendant even possessed the gun,

an undisputed fact in this case. In fact, *Bailey* cuts against Defendant. The gun at issue in that case was found underneath the seat of the defendant's car, and the Court found that "if the government had produced sufficient evidence to prove possession, then the fact that the gun was loaded and located underneath [defendant's] seat would likely demonstrate that [defendant] possessed the gun in furtherance of his drug trafficking crime." *Id*. at 950.

Defendant is therefore reliant only on the fact that this Court has held that possession by itself is insufficient. *See Mackey*, 265 F.3d at 462; *United States v. Penney*, 576 F.3d 297, 315 (6th Cir. 2009). But, the government did not only show mere possession. It demonstrated that Defendant possessed guns in close proximity to drugs in a location that was used to deal drugs. In addition, an officer testified that the types of guns that Defendant owned were used by drug dealers and that the types of guns and methods of storing them were not consistent with a gun collector, Defendant's purported explanation for owning the relevant guns. The district court readily understood the proper standard and, in fact, found that Defendant's shotgun, which was located in the residence, was not used in furtherance of his drug crimes. The district court distinguished the shotgun from the other firearms because it was unloaded. All told, while the circumstantial evidence beyond mere proximity did not compel a finding that Defendant violated § 924(c), it was assuredly sufficient to allow the district court to find that the gun was used in furtherance of his drug crime.

## B. Improperly Admitted Expert Testimony

Defendant also challenges the admission of testimony by the government's expert, Birkenhauer, as violating Federal Rule of Evidence 704(b). When the testimony was given, Defendant's counsel did not object on that basis. Defendant's only objection was that Birkenhauer was not qualified. The district court instructed Defendant's counsel that it could probe Birkenhauer's qualifications on cross-examination. At no point did Defendant's counsel argue that

the evidence was impermissible under Rule 704(b). Since Defendant failed to make his 704(b) objection to the district court, we review any alleged error under the "plain error" standard. "The 'plain error' rule . . . applies where a party objects to an evidentiary determination on specific grounds in the trial court, but on appeal the party asserts new grounds challenging that determination." *United States v. Demjanjuk*, 367 F.3d 623, 629 (6th Cir. 2004) (quoting *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989)). "To establish plain error, [Defendant] must demonstrate that (1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008) (citation and quotation omitted).

Defendant argues that the district court erred by allowing the government's purported expert, Birkenhauer, to state his opinion that Defendant's guns were used to protect drugs and their proceeds. The first inquiry under plain error review is to determine whether the admission of this evidence was even in error. Rule 704(b) states: "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged . . ." The requirements of § 924(c) that the gun was possessed "in furtherance" of a drug trafficking offense requires a determination of intent. *See Dean v. United States*, 129 S.Ct. 1849, 1857 (2009) (noting that the enhancements for violating § 924(c)(i) "clearly require proof of intent"). Defendant contends therefore that Birkenhauer's testimony opined as to Defendant's intent in possessing the guns and should have been barred by Rule 704(b).

"Law enforcement officers may testify concerning the methods and techniques employed in an area of criminal activity and to establish 'modus operandi' of particular crimes." *United States*

*v. Pearce*, 912 F.2d 159, 163 (6th Cir.1990). "Rule 704(b), however, prevents an expert witness from testifying that a defendant in a criminal case did or did not have the requisite mental state or condition constituting an element of the crime charged, as ultimate issues are matters for the trier of fact." *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004). A crucial inquiry is "whether the expert actually referred to the intent of the defendant or, instead, simply described in general terms the common practices of those who clearly do possess the requisite intent, leaving unstated the inference that the defendant, having been caught engaging in more or less the same practices, also possessed the requisite intent." *Id.* (quoting *United States v. Frost*, 125 F.3d 346, 383-84 (6th Cir. 1997)).

Under this standard, the admission of Birkenhauer's statement was a clear error. Birkenhauer was unambiguously stating his opinion of the specific mental state of Defendant in terms of Defendant's purpose in possessing the guns. To repeat, the examination went as follows:

> Q: Based on your review of the evidence, discussions that you've had, your training, your experience, do you have an opinion, based upon a reasonable investigative certainty as a narcotics investigator, regarding the connection between *these guns and the crack cocaine that was found in the residence with the guns?*
>
> A: I do
>
> Q: What is that opinion?
>
> A: I believe the guns were used to protect drugs and their proceeds.

(R. 59 at 80) (emphasis added). That testimony is not describing "in general terms" the conduct of other drug dealers but is instead offering a specific statement that gave Birkenhauer's opinion as to how Defendant used the guns at issue. "Rule 704(b) may be violated when the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant, or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent,

mental state, or mens rea." *United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001) (citations and quotations omitted). Birkenhauer directly testified what he believed to be Defendant's intent, namely that Defendant's guns "were used to protect drugs and their proceeds."[3]

To show plain error, however, Defendant must also show that the error affected a substantial right. An error affected a substantial right if it "affected the outcome of the district court proceedings." *United States v. Smith*, 601 F.3d 530, 541 (6th Cir. 2010). Defendant's best argument for why the error should result in a reversal is that the district court specifically referred to Birkenhauer's opinion in both its written and oral decision rendering a verdict. Despite this obvious mistake, consulting both the judge's written and oral statements leaves the unmistakable impression that the district court would have found Defendant guilty even without the improper testimony.

The district court stated an explanation of its judgment orally and also issued findings of fact and conclusions of law following the bench trial. Its oral and written decisions follow a similar tack. First, the district court noted factors that this Court has considered relevant in determining whether a gun was used in furtherance of a drug crime. *See United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001). It then explained the circumstantial evidence that it relied on in finding against Defendant. In its written order, the district court cited six pieces of circumstantial evidence for its determination

---

[3]The day before oral argument in this case, the government submitted a letter pursuant to Fed. R. App. P. 28(j). The letter cites a recent Eight Circuit case, *United States v. Parish*, 606 F.3d 480 (8th Cir. 2010). In that case, the court found that testimony from a detective that the amount of crack cocaine "would be intended for distribution" was permissible. *Id*. at 491. The detective was responding to the question of "whether just based on that amount, [the crack cocaine] would have been intended for distribution or personal use?" *Id*. at 490-91. The court rejected the 404(b) challenge because the detective's "testimony concerned the amount; . . . he did not directly testify to [defendant's] intent, although the jury was free to infer the ultimate conclusion." *Id*. at 491. In this case, Birkenhauer's challenged testimony was based on all of the factors specific to this case and his view of what those factors said about Defendant's intent.

that five of Defendant's guns were possessed in furtherance of Defendant's admitted drug trafficking.

1. Defendant's admission to Det. McGuffey that he sold crack cocaine out of the basement of the residence;

2. The location of the firearms in relation to the crack cocaine located on the dresser in the basement;

3. The fact that the firearms were located in an area where Defendant's drug transactions were known to occur, to wit, the basement;

4. The presence of electronic scales and ammunition in the basement of the residence;

5. The fact that the firearms were loaded; and

6. The testimony of Sgt. Bill Birkenhauer with the Northern Kentucky Drug Strike Force who opined that drug dealers like Defendant use firearms to protect their drugs and drug proceeds. In this instance, Sgt. Birkenhauer opined that the firearms were possessed by Defendant for that purpose.

(R. 36 at 6).

The list above gives a litany of reasons why the district court determined that the guns were possessed in furtherance of Defendant's drug activity. The improper testimony of Birkenhauer constitutes only one of the six pieces of circumstantial evidence. Even more damaging for Defendant, the district court elaborated on its conclusions for more than two additional pages without referencing the improperly admitted testimony.[4] The district court repeatedly stressed the close

---

[4]The district court did state that "the testimony of Sgt. Birkenhauer supports the conclusion that none of the guns seized from Defendant's basement were possessed for collection purposes." (R. 36 at 8-9). However, this statement refers to Birkenhauer's testimony that did not run afoul of Rule 704(b). Birkenhauer permissibly described at length the practices of gun collectors as contrasted to drug dealers. This testimony clearly motivated the district court's second mention of Birkenhauer, since the next sentence was: "Gun collectors do not leave their guns loaded without safety features, and ordinarily store them in gun lockers." *Id*.

proximity of the weapons to the drugs as well as the fact that all of the weapons were loaded, facts that are highly indicative of improper purpose according to *Mackey*.

In his oral statement, the district court gave its reasoned explanation for why it found five of the six guns were used to further a drug crime and why it rejected that argument for an unloaded shotgun. In this discussion, the district court discussed each gun and emphasized the proximity of the guns to the drugs and whether they were loaded. These findings were based on the factors laid out in *Mackey*, as well as Birkenhauer's permissible testimony about the differences between the habits of gun collectors and drug dealers. Four handguns were loaded and within a few feet of the drugs. A rifle was further away, but "it was loaded and easily accessible, which distinguishes, at least in the Court's view, the other 12 gauge shotgun that was not loaded." (R. 54 at 147). In discussing why he rejected Defendant's argument that he was collecting guns, the district court stated "first and most significantly, the fact that each of these firearms were loaded gives the Court its primary reason why I do not believe that these guns were for collection purposes." *Id.*

Based on the district court's oral and written justification, we find that the district court would have rendered the same verdict even if Birkenhauer had not been allowed to make the one comment that violates Rule 704(b). The district court assuredly erred in relying on testimony that clearly violated Rule 704(b), but the court's improper reliance on Birkenhauer's statement was only one part of the lengthy justification the district court provided in rendering its decision. Therefore, the error did not affect a substantial right, and Defendant's conviction must be upheld.

## CONCLUSION

For the foregoing reasons, Defendant's conviction is **AFFIRMED**.